UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

**Judge Berman**

----------------------------------------------------------------------------x

LOUBERT ALEXANDRE, YVON AUGUSTIN,
MAX CHARTELAIN, WILFRED GERMAIN, CLAUDE
LESSAGE, and JEAN PIERRE,  INDIVIDUALLY AS
OWNERS OF YELLOW CAB MEDALLIONS IN THE
CITY OF NEW YORK AND ON BEHALF OF A CLASS
OF ALL OWNERS SIMILARLY SITUATED, AS WELL AS
INDIVIDUALLY, TOGETHER WITH MAMNUNUL HAQ
and ASIM AKHTAR,  AS HOLDERS OF HACK
LICENSES IN THE CITY OF NEW YORK AND AS
REPRESENTATIVES ON BEHALF OF A CLASS OF
ALL HOLDERS OF HACK LICENSES IN THE CITY OF
NEW YORK, and the NEW YORK TAXI WORKERS
ALLIANCE,

**'07 CIV  8175**

Civil Action No.

CLASS ACTION
COMPLAINT
FOR INJUNCTIVE RELIEF
AND DAMAGES

                              Plaintiffs,

JURY TRIAL DEMANDED

                - against -



THE NEW YORK CITY TAXI AND LIMOUSINE COM-
MISSION, MATTHEW DAUS, AS COMMISSIONER
/CHAIR OF THE NEW YORK CITY TAXI AND LIMO-
USINE COMMISSION, AND THE CITY OF NEW YORK,

                              Defendants.

----------------------------------------------------------------------------x

        Plaintiffs Alexandre, Augustin, Chartelain, Germain, Lessage, Pierre, Haq, and Akhtar,

as individuals as well as class representatives for all those similarly situated, and the New York

City Taxi Workers Alliance ("NYTWA"), all by their attorneys Koehler & Isaacs, LLP, for their

complaint against defendant the New York City Taxi and Limousine Commission ("TLC"),

Matthew Daus, as Commissioner/Chair of the New York City Taxi and Limousine Commission

and the City of New York ("City").

1

1. This is an action seeking relief against defendants for mandating the installation of equipment to perform the functions outlined in the TLC's "Taxi Technology System" (hereinafter "TTS") no later than January 31, 2008 in every yellow taxicab vehicle which operates for public hire in New York City under the auspices of a medallion issued by the City acting through the agency of the TLC which is brought on behalf of individual owners of such medallions and medallion bearing taxicab vehicle and on behalf of owners and renters of such medallion bearing taxicabs who are themselves licensed to operate such public hire yellow taxi vehicles in New York City by the City also acting through the agency of the TLC. Plaintiffs contend that such mandate constitutes a deprivation of their property without due process in violation of the Fourth, Fifth and Fourteenth Amendments to the Constitution of the United States, the federal Civil Rights Act of 1871, 42 U.S.C. §1983, and Articles I § 6 and I § 12 the Constitution of the State of New York .

Jurisdiction and Venue

2. Jurisdiction of this Court is predicated upon 28 U.S.C. §1331, 1343 (a)(4), 1367 and 2201.

3. Venue is laid in this Court pursuant to 28 U.S.C. §1391 (b) because the acts complained of occurred within its boundaries and because TLC maintains its principal operating office in the Southern District of New York.

Parties

4. Plaintiffs Alexandre, Augustin, Chartelain, Germain, Lessage and Pierre are owners of medallions and are owner-operators of yellow medallion taxicab vehicles operating in the City of New York.

a.  Plaintiff Alexander resides in Queens county, owns medallion number 1T58 and hack license 485550.  He has driven medallion taxicabs for 4 ½ years and purchased his medallion, which cost him two hundred ninety six thousand dollars ($296,000), in 2004.  He also owns the 2004 Toyota Sienna to which the medallion is affixed.

b.  Plaintiff Augustin resides in Queens county, owns medallion number 9D79 and hack license number 493637.  He has driven medallion taxicabs for ten (10) years and purchased his medallion, which cost him $315,000, in 2005.  He also own the Toyota Sienna to which the medallion is affixed.

c.  Plaintiff Chartelain resides in Nassau county, owns medallion number 4D54 and hack license number 443468.  He has driven medallion taxicabs for over 18 years and purchased his medallion, which cost him $150,000, in 1994.  He also owns the Ford Crown Victoria to which the medallion is affixed.

d.  Plaintiff Germain resides in Queens county, owns medallion number 5A35 and hack license number 450273. He purchased his medallion, which cost him $200,000, in 2000. He also owns the Toyota Sienna to which the medallion is affixed.

e.  Plaintiff Lessage resides in Nassau county, owns medallion number 5B54 and hack license 459706.  He has driven medallion taxicabs for approximately 15 years and purchased his medallion, which cost him $185,000, in 2001. He also owns the Toyota Sienna to which the medallion is affixed.

f.  Plaintiff Pierre resides in Kings County, owns medallion number 6C36 and hack license number 395606.  He has driven taxicabs full time for over 18 years, and purchased his medallion, which cost him $145,000, in 1989.  He also owns the Toyota Sienna to which the

medallion is affixed.

5. Plaintiff Mamnunul Haq resides in Kings County and is a driver who owns his own vehicle, a 2007 Ford Crown Victoria, but not the medallion. Such drivers commonly sign a single document known as "Medallion Lease and Taxicab Purchase" contract and are commonly referred to as "DOVs" ("Driver Owned Vehicles"). He holds hack license number 466852. He has driven taxicabs for approximately 15 years, and has had additional costs imposed on him by TLC's mandate of TTS in the form of advanced payments for TTS which have been added on to his current vehicle lease contract.

6. Plaintiff Asim Akhtar resides in Kings County and holds hack license number 5209653. He rents both his medallion and taxicab vehicle from a garage. Such drivers are commonly referred to as "garage lease drivers." These drivers do not sign a formal lease with the garages or owners that they rent from, but rather agree to accept that rental will be assessed on a weekly basis (so-called "weekly contracts") or on a daily basis (so-called "daily contracts"). Insofar as TLC regulates rental payments, they merely prescribe weekly and daily rental caps. Drivers like Asim have had additional costs imposed on them by TLC's mandate of TTS in the form of advanced payments for TTS which are being included in their current rentals.

7. Plaintiff New York Taxi Workers Alliance ("NYTWA") is an association of New York City taxi drivers which devotes all of its time, resources and energy to the advancing the interests and welfare of taxi drivers in the City of New York. Its headquarters are at 37 West 28th Street, Suite 302, New York, New York 10016 and it asserts a claim only for institutional damages which it has suffered as a result of defendants' mandate of TTS.

8. Defendant City is a municipality within the State of New York. Among the many

- 4 -

functions it performs is the regulation of public hire taxi vehicles and taxi vehicle operators in

the City of New York. It delegates this function to the TLC which has its headquarters offices at

40 Rector Street in the borough of Manhattan. Defendant Daus is Chairman of the TLC.

### Definition

9. For purposes of this Complaint, TTS encompasses the permanent physical installation

in each yellow taxi vehicle of equipment to produce four results: 1) a text message box; 2) a

credit card machine ; 3) a Passenger Information Monitor; and 4) software to create an

electronic trip sheet, which includes GPS technology.

### Class Action Allegations

10. Individual plaintiffs sue on behalf of themselves and all other similarly situated

individuals and seek to represent, pursuant to Rule 23 (a), Rule 23 (b) ( 2 ) and (b) (3) of the

Federal Rules of Civil Procedures, two overlapping classes comprised of (A) owner-operators of

medallions and public hire yellow medallion bearing taxi vehicles who must pay for the

installation of  TTS in their vehicles or face fines and suspension of their medallions, as set forth

more fully below; (B) all owners of taxi vehicles who must pay the higher costs of TTS

technology which have been added to their Medallion Lease And Taxicab Purchase Contracts

and all other holders of hack licenses who must pay in their so-called "weekly" or "daily"

contracts increased fees to rent the taxi vehicles they drive, and whose driving patterns will

become subject to tracking by TTS, as set forth more fully below.

11. Plaintiff classes seek to enjoin TLC's mandate that TTS be installed in every public

hire yellow medallion taxi vehicle in New York City, beginning with TLC safety inspections

held on or after October 1, 2007, as an unconstitutional taking of sub-class A's property, who

must suffer it upon pain of losing the use of their medallions, an unconstitutional taking of property of sub-class B DOV drivers' property, and is an unconstitutional infringement upon the property of the hack licenses issued to members of sub-classes A and B, all without due process of law.

12. The class period commences on the date the TLC's regulations mandating the installation of TTS in each public hire taxi vehicle on or before January 31, 2008, which regulation became effective, upon information and belief on or about June 1, 2007, and extends to the date on which defendants are enjoined from, or otherwise cease, enforcing their unconstitutional policies and practices.

13. The member of both classes are so numerous as to render joinder impractical. Upon information and belief, some 18% of taxi drivers, which translate to approximately twelve hundred and ninety (1290), are owner-operators of public hire taxi vehicles who are potential members of sub-class A and there are forty three thousand (43,000) taxi drivers licensed by TLC, all of whom are being or will be caused to share the cost of the installation of TTS, who are potential members of sub-class B.

14. Upon information and belief, joinder of all the members of either sub-class A or sub-class B is impracticable given the number of absent class members and because, particularly with respect to sub-class B, many members of the class are low-income persons who do not speak English well and likely would have great difficulty pursuing their rights individually.

15. The questions of law and fact common to sub-class A include that class members have common rights under the Fifth and Fourteenth Amendments and the various laws cited in paragraph 1 above to be compensated justly for the taking of their property entailed by the

- 6 -

permanent alteration of their property occasioned by the installation of TTS. The questions of law and fact common to sub-class B include that class members have common rights under the Fourth, Fifth and Fourteenth amendments to the United States Constitution, 42 U.S.C. § 1983 and Articles I § 6 and I § 12 of the New York Constitution, to not have the property right which they hold in their hack license burdened by costs associated with the installation of TTS.

16. The named individual plaintiffs are adequate representatives of the class. The violations of law alleged by the named individual plaintiffs stems from the same course of conduct by defendants that violated and continues to violate the rights of members of the class; the legal theory under which the named individual plaintiffs seek relief is the same or similar to that on which the class will rely. In addition, the harm suffered by the named individual plaintiffs is typical of harm suffered by the absent members of sub-class A and sub-class B.

17. The named individual plaintiffs have the requisite personal interest in the outcome of this action and will fairly and adequately protect the interests of the class. Counsel for individual plaintiffs are aware of no conflicts among members of the sub-classes.

18. A class action is superior to other available methods for the fair and efficient adjudication of this controversy because: ( A ) The prosecution of hundreds or thousands of separate actions would be inefficient and wasteful of legal resources; ( B ) the members of the class may be scattered throughout New York City and State and are not likely to be able to vindicate and enforce their Constitutional and statutory rights unless this action is maintained as a class action; ( C ) the issues raised can be more fairly and efficiently resolved in the context of a single class action than piecemeal in many separate actions; ( D ) the resolution of litigation in a single forum will avoid the danger and resultant confusion of possible inconsistent

determinations; ( E ) the prosecution of separate actions would create the risk of inconsistent or varying adjudications with respect to individuals pursuing claims against defendants which would establish incompatible standards of conduct for defendants; ( F ) defendants have acted and will act on grounds applicable to all class members, making final and declaratory and injunctive relief on behalf of all members necessary and appropriate; and ( G ) questions of law and/or fact common to members of the class especially on issues of liability predominate over any question, such as that of individual damages, that affect individual members.

Facts

19.  On or about June 1, 2007, the TLC promulgated new regulations requiring that all owner-operators of public hire yellow medallion bearing taxi vehicles, otherwise defined as sub-class A members, sign a contract with one of four TLC- approved vendors by August 1, 2007 obligating them to have TTS installed in each of their vehicles no later than the first inspection date for the taxi vehicle that falls after October 1, 2007.   A copy of the TLC's TTS regulations are annexed hereto as Exhibit A.

20.  On or about July 30, 2007, TLC mailed a letter in the form annexed hereto as Exhibit B directing owner-operators to complete the negotiation of TTS installation contracts no later than August 1, 2007 on pain of being served with a summons making them subject to a fine as well as suspension of their medallions.

21. On or about August 3, 2007, plaintiff Lessage received a phone call from a person purporting to speak on behalf of TLC who informed him that because he had not signed TTS installation contract he would be fined $350 and his medallion would be suspended.

22.  On or about September 1, 2007, Plaintiffs Alexandre, Chartelaine, Germain, Lessage,

Augustin, and Pierre each received a TLC Summons charging each driver with a violation of

TLC Owner Rules Sec.1-11(g) for failure to sign a contract with a TLC authorized vendor to

"buy, lease, rent or use a Taxicab Technology Enhancements System and Service for [my]

medallion", <u>requiring their appearance for an administrative hearing where they face the

suspension of their medallions</u>. A copy of the TLC Summons is annexed hereto as Exhibit C.

Violation of Rule 1-11(g) carries a penalty of "$250 and suspension until compliance". Plaintiff

Alexandre has a hearing scheduled to occur on September 24th, 2007. Plaintiff Chartelaine has a

hearing on September 26th, 2007. Plaintiff Germain has a hearing set for September 26th, 2007.

Plaintiff Lessage has a hearing date of September 26th, 2007. Plaintiff Augustin has a hearing

scheduled to occur on September 28th, 2007. Plaintiff Pierre has a hearing on September 28th,

2007.

    23.   Section 1 of Exhibit A when read in conjunction with Section 9 of Exhibit A also

specifies that those public hire yellow medallion bearing taxi vehicles - which are normally and

regularly inspected by TLC safety inspectors three times annually as part of the TLC's safety

program - inspected after October 1, 2007 which do not have TTS installed in them will automa-

tically be disqualified from operating as public hire taxi vehicles within the City of New York.

    24.  Some individual plaintiffs, like many drivers included in the proposed classes of

plaintiffs, have developed their own individual patterns of positioning their cabs during their

working hours to maximize their cabs' utilization and, thus, enhancing their own revenues. Each

taxi driver regards his or her own pattern as proprietary.

AS AND FOR A FIRST CLAIM FOR RELIEF
PURSUANT TO 42 U.S.C. § 1983

    25.  Plaintiffs repeat and re-allege paragraphs 1 through 24 as if they were fully set forth

- 9 -

here.

26.  By implementing and promulgating Exhibit A, defendants have deprived and will continue to deprive individual plaintiffs, and all others similarly situated to them, of rights remedies, privileges and immunities guaranteed to every citizen of the United States in violation of 42 U.S.C. § 1983 and of rights guaranteed by the Fourth, Fifth and Fourteenth Amendments of the United States Constitution.

27.  Defendants have acted under pretense and color of state law and in their official capacities and within the scope of their public employment.  Said acts by defendants were beyond the scope of their jurisdiction, without authority of law, and in abuse of their powers to deprive individual plaintiffs, and all others similarly situated to them, of their constitutional rights secured by 42 U.S.C. § 1983 and by the Fifth and Fourteenth Amendments to the United States Constitution.

AS AND FOR A SECOND<br>CLAIM FOR RELIEF

28.  Plaintiffs repeat and re-allege paragraphs 1 through 24 as if they were fully set forth here.

29.  By implementing and promulgating Exhibit A, defendants have deprived and will continue to deprive individual plaintiffs, and others similarly situated to them, of rights remedies, privileges and immunities guaranteed to every citizen of the State of New York, in violation of the rights guaranteed by Article I  § 6 and Article I §12 of the New York State Constitution.

30.  Defendants have acted under pretense and color of state law and in their official capacities and within the scope of their public employment.  Said acts by defendants were beyond the scope of their jurisdiction, without authority of law, and in abuse of their powers

to deprive individual plaintiffs, and all others similarly situated to them, of their constitutional rights secured by Article I § 6 and Article I § 12 of the New York State Constitution.

31. If defendants' policy of fining owner-operators and suspending their medallions based on sub-class A members refusal to sign contracts to install TTS in their vehicles on or after August 1, 2007 is not enjoined, named individual plaintiffs and sub-class A members will be subjected to immediate and irreparable injury for which no adequate remedy exists in that such class members will have their property permanently altered without just compensation in violation of their rights under the Fifth and Fourteenth Amendments to the United States Constitution and to Article I § 6 and Article I § 12 of the New York State Constitution.

32. If defendants' policy of requiring all public for hire taxi vehicles to have TTS installed within them no later than January 31, 2008 is not enjoined, named individual plaintiffs and sub-class B members will be required to allow monitoring of their proprietary patterns of conducting their business by having TTS present in their vehicles, which is an immediate and irreparable injury for which no adequate remedy exists in violation of their rights under the Fifth and Fourteenth Amendments to the United States Constitution and to Article I § 6 and Article I § 12 of the New York State Constitution.

33. If defendants' policy that any vehicle which does not have TTS installed when it is inspected on or after October 1, 2007 cannot be operated as a public hire yellow medallion bearing taxi vehicle is not enjoined, named individual plaintiffs and sub-class B members will continue to bear the costs of installation of TTS and will be subject to tracking which will disclose their proprietary patterns of conducting their business both of which are immediate and irreparable injury for which no adequate remedy exists in violation of their rights under their

- 11 -

Fourth, Fifth and Fourteenth Amendments to the United States Constitution and to Article I § 6 and Article I § 12 of the New York State Constitution.

WHEREFORE, individual plaintiffs ask this Court:

A.  To enter an order certifying this action as a class action pursuant to FRCP 23 ( a ) and ( b ) for the plaintiff sub-classes described herein and naming individual plaintiffs as class representatives.

B.  To enter judgment declaring that defendants' policy of requiring each public hire yellow medallion bearing taxi vehicle operating within the City of New York to install TTS on or before January 31, 2008 is unconstitutional.

C.  To award compensatory damages to:

a.  individual plaintiffs Alexandre, Augustin, Chartelain, Germain, Lassage and Pierre and sub-class A members to make them whole for any costs they have or will incur in the course of installing TTS;

b. individual plaintiffs Haq and Akhtar to make them whole for any costs that they have or will incur in connection with the installation of TTS;

c.  plaintiff NYTWA for opportunity costs which it has incurred in attempting to block the initiation of TTS.

D.  To award punitive damages

E.  To award named individual plaintiffs and members of the class reasonable attorney's fees and costs.

F.  To grant such other and further relief as this Court shall find just and proper.

Dated:  September 19, 2007                    Respectfully submitted,
        New York, New York                   KOEHLER & ISAACS



        By:_____S/ MALCOLM GOLDSTEIN_____ __
                Malcolm A. Goldstein (MAG 4602)




        By:_____S/NAUREEN RASHID____ _____
                Naureen Rashid (NR 5803)

        Attorneys for Plaintiffs Alexandre, Augustin, Char-
        telain, Germain, Lessage, Pierre, Haq, Akhtar, and
        New York Taxi Workers Alliance
        61 Broadway, 25th Floor
        New York, New York 10006
        (917) 551-1300



# NEW YORK CITY TAXI AND LIMOUSINE COMMISSION

## Notice of Promulgation of Rules

**Notice is hereby given in accordance with section 1043(e) of the Charter of the City of New York ("Charter") that the Taxi and Limousine Commission ("TLC") promulgates rules governing taxicab technology service systems in taxicabs.**

These rules are promulgated pursuant to sections 1043 and 2303(b)(11) of the Charter and sections 19-503 and 19-532(b) of the Administrative Code of the City of New York.

These rules were published on January 24, 2007, for public comment in The City Record. On March 8, 2007, a public hearing on such proposed rules was held by the TLC at its offices at 40 Rector Street, 5th Floor, New York, New York 10006. At that time, Sections 1-85(b). 12-06(u)(4) and 15-44 and penalty sections 1-86, 12-08 and 15-43 pertaining to such sections were tabled at the public hearing and the remainder of these rules were voted on and passed. On May 10, 2007, the tabled sections were voted on and passed. On April 9, 2007, further modifications to these rules were published for public comment in The City Record. On May 10, 2007, a public hearing on such proposed rules was held, the rules were voted on and passed. Pursuant to section 1043(e)(1)(c) of the Charter, these rules will take effect 30 days following the publication in The City Record.

New material is underlined.
[Material inside brackets indicates deleted material.]

      Section 1.  Section 1-01 of Chapter 1 of Title 35 of the Rules of the City of New York is amended by adding four new definitions to read as follows:

  § 1-01    Definitions.

**Compliance date.** The compliance date for the installation of taxicab technology systems in medallion taxicabs shall be the date of the first regularly scheduled inspection for each taxicab on or after October 1, 2007, unless extended pursuant to section 1-11(g) of this chapter.

**Merchant.** A "merchant" is an individual or business entity licensed by the Commission that contracts with a merchant bank provider of credit/debit card services and other merchant account related services, which merchant bank provider is approved by the Commission as a

1

subcontractor to one or more taxicab technology service providers  for the purpose of providing in-cab payment  of taxicab fares, surcharges, tolls and tips by credit/debit cards.

.    .    .    .

**Taxicab technology service provider.**  A "taxicab technology service provider" is a vendor who has  contracted with the Commission to install and maintain the taxicab technology system in taxicabs.

**Taxicab technology system.**  The "taxicab technology system" is hardware and software that provides the following four core services (collectively "four core services"): (i) allows credit, debit and prepaid card payment required by section 3-03(e)(7) of this title, (ii) text messaging required by section 3-03(e)(8) of this title, (iii) trip data collection and transmission required by section 3-06 of this title, and (iv) data transmission with the passenger information monitor required by section 3-07 of this title.

Section 2.  Subdivisions (a), (e), (f) and (g) of section 1-11 of chapter 1 of Title 35 of the Rules of the City of New York are amended, and new subdivision (h) is added,  to read as follows:

§1-11 Vehicle Condition.

(a) While a taxicab is in operation, all equipment, including brakes, tires, lights and signals must be in good working order and meet all requirements of the New York State Vehicle and Traffic Law, the Commission, and [Taxicab Specifications §] sections 3-03 and/or 3-03.1 or 3-03.2 of this title and these rules.

.    .    .    .

(e) (i) For any taxicab that is required to be equipped with the [data collection and transmission equipment pursuant to §3-06 of this Title] taxicab technology system, such equipment shall at all times be in good working order and each of the four core services shall at all times be functioning.  (ii) In the event of any malfunction or failure to operate of  such taxicab technology system, the owner shall file an incident report with the authorized taxicab technology service provider promptly and   in no event more than two (2) hours following the owner's discovery of such malfunction or failure to operate or  such time as the owner reasonably should have known of  such malfunction or failure to operate.  If the driver or taxicab agent previously filed a timely incident report regarding such malfunction or failure to operate, the owner shall not be required to file a separate incident report but shall obtain an incident report number from the driver, agent or authorized taxicab technology service provider. The owner shall meet, or shall instruct the taxicab agent to meet the appointment for repair scheduled by the authorized taxicab technology service provider following the filing of an incident report with  such authorized taxicab technology service provider.  A taxicab in which any of the four core services of the taxicab technology system, or any part thereof, are not functioning shall not operate  more than forty-eight (48) hours following the timely filing of an incident report by the owner, driver or agent.

(f) [For any taxicab that is required to be equipped with Passenger Information Monitor equipment pursuant to §3-06 of this Title, such equipment shall at all times be in good working order.] The owner of any taxicab required to be equipped with the taxicab technology

2

system shall equip such taxicab, except as provided in subdivision (g) of this section, with a taxicab technology system as set forth in sections 3-03(e)(7) and (8), 3-06 and 3-07 of this title.

(g)  The owner of any taxicab required to be equipped with a taxicab technology system shall contract to procure such equipment on or before August 1, 2007.  Except as provided in this subdivision, the owner shall install a taxicab technology system no later than the compliance date set forth in section 1-01 of this chapter. Taxicabs that are to be retired within six (6) months of the compliance date for each such taxicab shall be exempt from the requirement that the taxicab technology system be installed in the taxicab. If any taxicab technology service provider contracts to provide more than three thousand (3,000) taxicabs with its taxicab technology system  on or before August 1, 2007, the date by which each such taxicab is required to be equipped with such taxicab technology system may, upon prior written approval from the Chairperson, or his or her designee, be extended to each such taxicab's first scheduled inspection at the  Commission's Safety and Emissions Facility on and after February 1, 2008.

(h) The owner of any taxicab requiring six (6) or more repairs of the taxicab technology system in any thirty (30) day period shall promptly take such vehicle for inspection to, or schedule an inspection with, the  Commission's Safety and Emissions Facility. Such requirement shall not apply to the owner if compliance is made by the driver or agent of such vehicle.

Section 3.  Subdivisions (a) and (b) of Section 1-23 of Chapter 1 of Title 35 of the Rules of the City of  New York are amended to read as follows:

§1-23 Tampering Prohibited.

(a) Unless authorized by the [c]Commission no person shall tamper with, alter, repair or attempt to repair the taximeter or the taxicab technology system, or any seal affixed to the taxicab by a licensed taximeter repair shop or other authorized facility, cable connection or electrical wiring thereof  or make any change in the vehicle's mechanism or its tires which would affect the operation of the taximeter or the taxicab technology system; the owner is responsible for any tampering, alteration or any unauthorized repair or attempt to repair.

(b) It shall be an affirmative defense to a violation of [Rule] section 1-23(a) that the owner: (1) did not know of or participate in the alleged taximeter or taxicab technology system tampering; and (2) exercised due  diligence to ensure that taximeter-tampering or tampering with the taxicab technology system does not occur.  Examples of an owner's due diligence shall include, but are not limited to: (A) giving drivers a clear warning that violations of the taximeter or taxicab technology system tampering rules will result in the immediate termination of any lease agreement, the reporting to the Commission of driver tampering and the Commission's probable revocation of the driver's taxicab driver's license; (B) including on any written lease agreement provisions containing the warnings against violation of meter and taxicab technology system tampering rules; (C) stamping warnings regarding the illegality of meter and taxicab technology system tampering on  the trip [cards] records issued, if applicable, to all drivers of an owner's taxicabs; (D) requiring management personnel or mechanics to periodically check for proper odometer and meter mileage comparisons in order to determine if

3

there are inappropriate disparities between the two sets of figures; (E) conducting periodic random inspections of the taxicab meter and wiring and of the taxicab technology system for all such owner's taxicabs to detect any evidence of violation of meter or taxicab technology system tampering rules; and (F) having all such owner's taxicabs inspected  by a licensed meter shop once every inspection cycle.

Section 4. Subdivision (c) of Section 1-35 of Chapter 1 of Title 35 of the Rules of the City of New York is amended to read as follows:

§1-35 Markings and Advertising.

(c) An owner shall not display inside a taxicab any advertising or other notice not specifically authorized by these rules or the Commission's Marking Specifications for Taxicabs unless  approved by the Commission[.] , except:

(1) industry signage/logos of all credit/debit cards accepted by the taxicab technology system, all of equal size, shown in the information content on the passenger information monitor screen; and

(2) advertising in the information content on the passenger information monitor screen as set forth in section 1-36 of this chapter  and in section 3-07 of this title.

Section 5. Section 1-36 of Chapter 1 of Title 35 of the Rules of the City of New York is amended by adding a new subdivision (m), to read as follows:

| Inscription | Location | Size |
|---|---|---|
| (m) Brand name of passenger information monitor manufacturer or taxicab tech-nology service provider | On the bezel of the frame of the passenger information monitor | Not to exceed 1 1/4" in height and 4" in length |

Section 6. Paragraph (1) of subdivision (a) of section 1-52 of Chapter 1 of Title 35 of the Rules of the City of New York is amended to read as follows:

(a)  The following shall be present in the taxicab while it is in operation for hire:

(1) the driver's written trip record, also known as a "trip sheet" until [such time when] the taxicab is required to be equipped with [data collection and transmission equipment as described in §3-06 of the Taxicab Specifications] the taxicab technology system and thereafter whenever the taxicab technology system is inoperable for not more than forty-eight (48) hours following the filing of an incident report with the authorized taxicab technology service provider, as set forth in section 1-11(e) of this chapter;

4

Section 7.  Subdivision (e) of Section 1-56 of Chapter 1 of Title 35 of the Rules of the City of New York is amended to read as follows:

§1-56 Records.

.     .     .     .

(e) An owner shall take possession of the <u>written</u> trip records from the driver on a weekly basis, until [such time when] the taxicab is required to be equipped with [data collection and transmission equipment as described in §3-06 of the Taxicab Specifications] <u>the taxicab technology system and thereafter whenever the taxicab technology system is inoperable for not more than forty-eight (48) hours following the filing of an incident report with the authorized taxicab technology service provider, as set forth in section 1-11(e) of this chapter.</u>

Section  8.  Chapter 1 of Title 35 of the Rules of the City of New York is amended by adding a new section 1-85, to read as follows:

§1-85 <u>Limitations on Credit and Debit Card Transaction Fees.</u>

<u>(a)  A merchant shall not charge a mark-up to any passenger for credit/debit card transactions.</u>
<u>(b) A merchant who is an owner may charge a mark-up to a driver licensed by the Commission of not more than five percent (5 %) of the total credit/debit charges incurred during the driver's shift.</u>

Section 9. Section 1-86 of Chapter 1 of Title 35 of the Rules of the City of New York is amended by amending penalties labeled §1-11(e) and (f) and by adding new penalties labeled §1-11 (g) and (h) and §1-85(a) and (b), to read as follows:

| Rule No. | Penalty | Personal Appearance Required |
|---|---|---|
| | .     .     .     . | |
| §1-11(e)<u>(i)</u>[& (f)] | $[100] <u>250</u> and suspension [of the medallion] until [the defective condition is corrected] <u>compliance.</u> | [No] <u>Yes</u> |
| <u>§1-11(e)(ii)</u> | <u>$250 and suspension until compliance</u> | <u>Yes</u> |
| <u>§1-11(f)</u> | <u>$1,000 and suspension until compliance.</u> | Yes |

5

| §1-11(g) | $250 and suspension until compliance. | Yes |
| §1-11(h) | $250 | No |
| | . . . . | |
| §1-85(a) and (b) | First violation: $200. Second violation: $300. Third violation: $500. In addition to the penalty payable to the Commission, the administrative law judge may order the owner to pay restitution to the passenger or driver, equal to the excess amount that was charged to the passenger or driver. | Yes |

Section 10.  Section 2-01 of Chapter 2 of Title 35 of the Rules of the City of New York is amended by adding two new definitions and amending a third definition to read as follows:

§ 2-01 Definitions.

**Taxicab technology service provider.**  A "taxicab technology service provider" is a vendor who has  contracted with the Commission to install and maintain the taxicab technology system in taxicabs.

**Taxicab technology system.**  The "taxicab technology system" is hardware and software that provides the following four core services (collectively "four core services"): (i) credit, debit and prepaid card payment required by section 3-03(e)(7) of this title, (ii) text messaging required by section 3-03(e)(8) of this title, (iii) trip data collection and transmission required by section 3-06 of this title, and (iv) data transmission with the passenger information monitor required by section 3-07 of this title.

**Trip Record.** A "trip record" also known as a trip sheet or trip log, is the written, computerized, automated and/or electronic accounting of a taxicab ride.  The trip data to be transmitted or recorded shall include the taxicab license number (medallion number); the taxicab driver's license number; the location of trip initiation; the time of trip initiation; the number of passengers, the location of trip termination; the time of trip termination; the itemized metered far for the trip (tolls, surcharge and tip, if paid by credit or debit card); the distance of the trip, the trip number, the method of payment, the total number of passengers, as well as such other information as may be required by the Commission.  The electronic capture of required trip record data shall commence [as agreed upon between the TLC and the authorized contractor on a date certain to be set by the Commission] no later than the compliance date set forth in section 1-01 of this title. Trip record information shall be available to the TLC, the taxicab driver, medallion owner, taxicab owner and/or leasing agent upon reasonable demand based upon

parameters set between the TLC and approved vendor(s). The trip record shall be kept in an approved archived form for a minimum of three years after the date of the taxicab ride.

Section 11. Section 2-26 of chapter 2 of Title 35 of the Rules of the City of New York is amended by adding new subdivisions (f) and (g), to read as follows:

§2-26 Condition of Taxicab.
.    .    .    .

(f) (i) For any taxicab that is required to be equipped with the taxicab technology system, such equipment shall at all times be in good working order and each of the four core services shall at all times be functioning. (ii) In the event of any malfunction or failure to operate of such taxicab technology system, the driver shall file an incident report with the authorized taxicab technology service provider promptly and in no event more than one (1) hour following the driver's discovery of such malfunction or failure to operate or such time as the driver reasonably should have known of such malfunction or failure to operate, or the end of the driver's shift, whichever occurs first. If the owner or taxicab agent previously filed a timely incident report regarding such malfunction or failure to operate, the driver shall not be required to file a separate incident report but shall obtain an incident report number from the owner, agent or taxicab technology service provider. A taxicab in which any of the four core services of the taxicab technology system, or any part thereof, are not functioning shall not operate more than forty-eight (48) hours following the timely filing of an incident report by the owner, driver or agent.

(g) If any passenger information monitor is not operational and can be made operational by the driver, the driver shall do so.

Section 12. Paragraph (1) of subdivision (a) of section 2-27 of chapter 2 of Title 35 of the Rules of the City of New York is amended to read as follows:

(a) A driver shall not operate a taxicab unless the following are present in the taxicab:

(1) [Operable data collection and transmission equipment as described in §3-06 of the Taxicab Specifications as required pursuant to these rules.] The taxicab technology system as defined in section 2-01 of this chapter, provided, however, that, [If] if the taxicab is not yet required to be equipped with [data collection and transmission equipment as described in §3-06 of the Taxicab Specifications which has been approved by and meets all of the requirements of the Commission] such taxicab technology system and whenever such taxicab technology system is inoperable for not more than forty-eight (48) hours following the filing of an incident report with the authorized taxicab technology service provider as set forth in section 2-26 of this chapter, [then] the driver must maintain a written trip record also known as a "trip sheet," containing such information as required by sections 2-01 and 2-28(a) of this chapter and section [§]3-06(b) [and § 2-01] of [TLC Rules] this title.

Section 13. Subdivisions (a), (b), (c), (d) and (e) of section 2-28 of chapter 2 of Title 35 of the Rules of the City of New York are amended to read as follows:

§2-28 Trip Records.

(a) Until [such time when] a taxicab is required to be equipped with [data collection and transmission equipment as described in §3-06 of the Taxicab Specifications] the taxicab technology system as defined in section 2-01 of this chapter, and thereafter whenever the taxicab technology system is inoperable for not more than forty-eight (48) hours following the filing of an incident report with the authorized taxicab technology service provider as set forth in section 2-26 of this chapter, a driver shall keep a written trip record in the taxicab as specified in [§] section 2-27(a) and shall enter the following information legibly in ink, as follows:

(1) at the start of each trip, the starting time, specific location and the number of passengers;

(2) on completion of the trip, the destination, the time, the amount of the fare, and any tolls paid;

(3) the taximeter readings [at finish] and the concluding time of his or her workshift;

(4) any toll bridges or tunnels used by the driver, whether or not with a passenger; and

(5) all other entries required by these rules.

(b) Until [such time when] a taxicab is required to be equipped with [data collection and transmission equipment as described in §3-06 of the Taxicab  Specifications] the taxicab technology system as defined in section 2-01 of this chapter, and thereafter whenever the taxicab technology system is inoperable for not more than forty-eight (48) hours following the filing of an incident report with the authorized taxicab technology service provider as set forth in section 2-26 of this chapter, a driver shall, at the beginning of each workshift, sign and certify on the written trip record that, with the exception of the taxicab technology system, the taxicab and its equipment are in good working condition and that, with the exception of such taxicab technology system, the items required in the taxicab are present, before operating the taxicab.

(c) [A] For any taxicab that is required to be equipped with the taxicab technology system, a driver shall transmit to an electronic database all necessary corrections that need to be made to the electronic trip record. [Until such time when a taxicab is required to be equipped with data collection and transmission equipment as described in §3-06 of the Taxicab Specifications a] A driver shall [not] at no time make erasures or obliterations on any written trip record [and], shall correct any wrong entry only by drawing a single line through the incorrect entry and recording the date, time and reason for the change.[. Until such time when a taxicab is

required to be equipped with data described in §3-06 of the Taxicab Specifications a driver] <u>and</u> shall not leave blank lines between entries on any written trip record.

(d) [Until such time when a taxicab is required to be equipped with data collection and transmission equipment as described in §3-06 of the Taxicab Specifications, a] <u>A</u> driver shall [not] <u>at no time</u> rewrite a written trip record either in whole or in part, unless authorized by the Commission.

(e) Until [such time when] a taxicab is required to be equipped with [data collection and transmission equipment as described in §3-06 of the Taxicab Specifications] <u>the taxicab technology system as defined in section 2-01 of this chapter, and thereafter whenever the taxicab technology system is inoperable for not more than forty-eight (48) hours following the filing of an incident report with the authorized taxicab technology service provider as set forth in section 2-26 of this chapter,</u> a driver shall submit his <u>written</u> trip sheet to the owner at the conclusion of [his] <u>the driver's</u> shift or lease period. [In the event that] <u>Whenever</u> a taxicab's [data collection and transmission equipment] <u>taxicab technology system</u> is inoperable <u>for not more than forty-eight (48) hours following the filing of an incident report with the authorized taxicab technology service provider</u>, the driver must maintain written trip records [until such time as when the data collection and transmission equipment is in good working order] <u>during the forty-eight (48) hours immediately following the filing of such incident report</u>.

Section 14.  The section title and subdivisions (a), (b) and (d) of section 2-31 of chapter 2 of Title 35 of the Rules of the City of New York are amended to read as follows:

§2-31 Tampering with Taximeter<u>, Taximeter Technology System</u> and Rooflight Prohibited.

(a) A driver shall not operate a taxicab in which the taximeter or the seals affixed thereto by a licensed taximeter repair shop <u>or the taxicab technology system</u> have been tampered with, broken or altered in any manner. The operation of a taxicab with a broken taximeter seal shall give rise to a rebuttable presumption that the driver knew of the tampering or alteration and operated the taxicab with such knowledge.

(b) A driver shall not tamper with, repair or attempt to repair, or connect any unauthorized device to, the taximeter <u>or the taxicab technology system,</u> or any seal, cable connection or electrical wiring thereof, or make any change in the vehicle's mechanism or its tires which would affect the operation of the taximeter <u>or the taxicab technology system</u>.

.    .    .    .

(d) It shall be an affirmative defense to a violation of [Rule] <u>section</u> 2-31(b) that the driver: (1) did not know of or participate in the alleged taximeter <u>or taxicab technology system</u> tampering;  and (2) exercised due diligence to ensure that taximeter-tampering <u>or tampering with the taxicab technology system</u> does not occur.

9

Section 15. The section heading and subdivisions (a) and (b) of section 2-32 of chapter 2 of Title 35 of the Rules of the City of New York are amended, and a new subdivision (c) is added, to read as follow:

§2-32 If Taximeter or Credit/Debit Card Acceptance Equipment [Becomes] Is Defective
    During Shift.

(a) A driver shall not pick up or transport a passenger when the taximeter is defective, until it has been repaired at a licensed taximeter shop or replaced by such shop with a taximeter which has been inspected, sealed and approved within the preceding twelve (12) months. [If] Until a taxicab is required to be equipped with the taxicab technology system as defined in section 2-01 of this chapter, if the taximeter is [designed or] equipped to accept credit or debit card payments for fares, a driver may not pick up or transport a passenger when the taximeter is incapable of accepting or processing credit or debit card transactions. When a taxicab is required to be equipped with the taxicab technology system, the driver may not pick up or transport a passenger when the system is incapable of accepting or processing credit or debit card transactions, unless: (i) in the event of any malfunction or failure to operate of the credit or debit card acceptance equipment, the driver promptly files an incident report with the authorized taxicab technology service provider, as set forth in section 2-26 of this chapter, and obtains an incident report number, and not more than forty-eight (48) hours have passed following the filing of such incident report, and (ii) the driver advises the passenger of the malfunction or failure to operate of the credit or debit card acceptance equipment prior to engaging the meter. [A driver may not refuse to accept credit or debit card payments from a passenger with valid credit or debit card for which payment has been authorized by the issuing or servicing financial institution.] In the event that the wireless payment equipment used to accept payment by credit and debit cards is inoperable at the destination of a trip as a result of a technical [reason] problem in the system's communication network [and] that is not related to the equipment in the taxicab, the customer has the option of either (i) paying cash or (ii) requesting the taxicab driver continue to a location where the wireless payment system may communicate with its network. If a taximeter or its parts become defective during the driver's shift while a passenger is in the taxicab, or if the taxicab technology system or its parts become defective while a passenger is in the taxicab such that the driver is unable to inform the passenger of the proper fare, the driver shall immediately notify the passenger and offer him or her the option of continuing the trip with a mutually agreed upon reasonable fare, or terminating the trip and paying the fare shown on the taximeter to that point.

(b) Upon terminating a trip because of a defective taximeter or defective taxicab technology system, the driver shall illuminate the "Off Duty" light, lock the rear doors, transmit to an electronic database for entry on the electronic trip record that the taximeter and/or the taxicab technology system is defective or, until [such time when] a taxicab is required to be equipped with [data collection and transmission equipment as described in §3-06 of the Taxicab Specifications] the taxicab technology system as defined in section 2-01 of this chapter, and thereafter whenever the taximeter technology system is inoperable for not more than forty-eight (48) hours following the filing of an incident report as set forth in section 2-26 of this chapter, enter on the written trip record that the taximeter and/or the taxicab technology system is defective[, and]. Whether or not the taxicab is required to be equipped with the taxicab

10

technology system, the driver shall return the taxicab immediately to the garage of record or a licensed taximeter repair shop.

(c) A driver shall not charge a mark-up to any passenger for credit/debit card transactions.

Section 16. Subdivision (a) of section 2-33 of chapter 2 of Title 35 of the Rules of the City of New York is amended to read as follows:

(a) When a taxicab is occupied by anyone in addition to the driver, the taximeter shall immediately be placed in the recording or "Hired" position and kept in that position until arrival at the destination, provided that if the passenger is not being charged a fare, the driver, in lieu of activating the meter, may illuminate the "Off Duty" light and transmit to an electronic database for entry on the electronic trip record that he or she is off duty and transporting a non-paying passenger and the details of time and distance of the free fare or, until [such time when] a taxicab is required to be equipped with [data collection and transmission equipment as described in §3-06 of the Taxicab Specifications] the taxicab technology system as defined in section 2-01 of this chapter, and thereafter whenever the taxicab technology system is inoperable for not more than forty-eight (48) hours following the filing of an incident report with the authorized taxicab technology service provider as set forth in section 2-26 of this chapter, enter on his or her written trip record, that he or she is off duty and transporting a non-paying passenger and the details of time, distance and reason for the transportation without charge. When the taxicab is engaged in a flat fare trip from Kennedy Airport to Manhattan or from Manhattan to Kennedy Airport in accordance with [Owners Rule §] section 1-69(a) of this title, the driver shall [not activate the meter, except in accordance with subdivision (b) of Rule §1-69, and shall] transmit to an electronic database for entry on the electronic trip record or enter on the written trip record that this is a flat fare trip to or from Kennedy Airport and the details of time and distance. When a taxicab is occupied by a passenger who is a person with a disability, the driver shall place the taximeter in the recording or "Hired" position only after the passenger has safely entered the taxicab. A taxicab driver shall not place the taximeter in the recording or "Hired" position while the driver is assisting a person with a disability to enter the taxicab or while assisting with that passenger's mobility aid.

Section 17. Paragraphs (3) and (4) of subdivision (a) and paragraph (4) of subdivision (b) of section 2-35 of chapter 2 of Title 35 of the Rules of the City of New York are amended to read as follows:

(a) For a trip beyond the City of New York, except for the counties of Westchester or Nassau, or the facilities of the Port Authority of New York and New Jersey at Newark Airport, the following shall be applicable:

. . .

(3) the out-of-City destination shall be transmitted to an electronic database upon arrival at the destination for entry on the electronic trip record or, until [such time when] a taxicab is required to be equipped with [data collection and transmission equipment as described in §3-06 of the Taxicab Specifications] the taxicab technology system as defined in section 2-01

of this chapter, and thereafter whenever the taxicab technology system is inoperable for not more than forty-eight (48) hours following the filing of an incident report with the authorized taxicab technology service provider as set forth in section 2-26 of this chapter, entered on the written trip record; and

(4)   the total charge shall be captured by an electronic database for entry on the electronic trip record or, until [such time when] a taxicab is required to be equipped with [data collection and transmission equipment as described in §3-06 of the Taxicab Specifications] the taxicab technology system as defined in section 2-01 of this chapter, and thereafter whenever the taxicab technology system is inoperable for not more than forty-eight (48) hours following the filing of an incident report with the authorized taxicab technology service provider as set forth in section 2-26 of this chapter, entered on the written trip record.

(b) For a trip to the counties of Westchester or Nassau, or Newark Airport, the following shall be applicable:

.    .    .

(4) the total charge shall be transmitted to an electronic database for entry on the electronic trip record or, until [such time when] a taxicab is required to be equipped with [data collection and transmission equipment as described in §3-06 of the Taxicab Specifications] the taxicab technology system as defined in section 2-01 of this chapter, and thereafter whenever the taxicab technology system is inoperable for not more than forty-eight (48) hours following the filing of an incident report with the authorized taxicab technology service provider as set forth in section 2-26 of this chapter, entered on the written trip record.

Section 18.  Subdivision (a) of section 2-39 of chapter 2 of Title 35 of the Rules of the City of New York is amended to read as follows:

§2-39 Non-Paying Passengers.

(a) If a passenger refuses to pay the metered fare, the driver must place the meter in the off or "Vacant" position, illuminate the "Off Duty" light, transmit the relevant information[,] and the amount of fare on the taximeter to an electronic database for entry on the electronic trip record or, until [such time when] a taxicab is required to be equipped with [data collection and transmission equipment as described in §3-06 of the Taxicab Specifications] the taxicab technology system as defined in section 2-01 of this chapter, and thereafter whenever the taxicab technology system is inoperable for not more than forty-eight (48) hours following the filing of an incident report with the authorized taxicab technology service provider as set forth in section 2-26 of this chapter, enter the words "Off Duty" and the amount of fare on the taximeter on the written trip record[,]. Whether or not the taxicab is required to be equipped with the taxicab technology system, the driver shall proceed directly to the nearest police precinct, present the facts to the police and follow their instructions for resolving the dispute.

Section 19. The heading and subdivision (b) of section 2-45 of chapter 2 of Title 35 of the Rules of the City of New York are amended, and a new subdivision (c) is added, to read as follows:

§2-45 Route and Method of Payment.

.     .     .     .

(b) A driver shall comply with any request of a passenger during the trip to change his or her destination or terminate the trip, unless it is impossible or unsafe for the driver to comply with such request, and the passenger shall pay the amount shown on the taximeter until such time as the taxicab is required to be equipped with the taxicab technology system as defined in section 2-01 of this chapter or, after such time, the amount shown on the  passenger information monitor, unless the taxicab technology system is inoperable for not more than forty-eight  (48) hours following the filing of an incident report with the authorized taxicab technology service provider as set forth in section 2-26 of this chapter, or there is a discrepancy between the amount shown on the  passenger information monitor and the taximeter. In that event, the passenger shall pay the amount shown on the taximeter, at the destination or time of termination.

(c) In a taxicab equipped with the taxicab technology system as defined in section 2-01 of this chapter or otherwise equipped to accept credit and debit card payment for fares, the driver shall comply with any request of a passenger as to the method for payment of the fare, whether in cash or by credit or debit card. Provided, however, that if such taxicab technology system is inoperable for not more than forty-eight (48) hours following the filing of an incident report with the authorized taxicab technology service provider as set forth in section 2-26 of this chapter, the driver shall not be required to accept payment by credit or debit card.

Section 20. Subdivision (b) of section 2-47 of chapter 2 of Title 35 of the Rules of the City of New York is amended to read as follows:

(b) A driver must always be capable of making change of a $20 bill, provided that if the driver finds himself or herself unable to change a $20 bill during his or her workshift [he or she] the driver may, with the passenger's consent, place the meter in an off or "Vacant" position, illuminate the "Off Duty" light, transmit the relevant information to an electronic database for entry on the electronic trip record or, until [such time when] a taxicab is required to be equipped with [data collection and transmission equipment as described in §3-06 of the Taxicab Specifications] the taxicab technology system as defined in section 2-01 of this chapter, and thereafter whenever the taxicab technology system is inoperable for not more than forty-eight (48) hours following the filing of an incident report with the authorized taxicab technology service provider as set forth in section 2-26 of this chapter, make an appropriate written trip record entry. [and] The driver shall then proceed to the nearest location where he or she may reasonably expect to obtain change.

Section 21.  Paragraphs (4), (5) and (6) of subdivision (e) of section 2-50 of chapter 2 of Title 35 of the Rules of the City of New York are amended to read as follows:

(e) Justifiable grounds for the conduct otherwise prohibited by [§§] sections 2-50(a), 2-50(b), 2-50(c) and 2-50(d) shall be the following:

.     .     .

(4) the driver is ending his or her workshift [and], has already illuminated the "Off Duty" sign, locked both rear doors, and has transmitted the relevant information to an electronic database for entry on the electronic trip record or, until [such time when] a taxicab is required to be equipped with [data collection and transmission equipment as described in §3-06 of the Taxicab Specifications] the taxicab technology system as defined in section 2-01 of this chapter, and thereafter whenever the taxicab technology system is inoperable for not more than forty-eight (48) hours following the filing of an incident report with the authorized taxicab technology service provider as set forth in section 2-26 of this chapter, indicated on the written trip record that he or she is off duty and proceeding to his or her garage or home;

(5) it is necessary to take the taxicab out of service for one of the reasons [given] specified in [§] section 2-52(a) [hereof] of this chapter, and the driver has already illuminated the "Off Duty" sign, transmitted the relevant information to an electronic database for entry on the electronic trip record or, until [such time when] a taxicab is required to be equipped with [data collection and transmission equipment as described in §3-06 of the Taxicab Specifications] the taxicab technology system as defined in section 2-01 of this chapter, and thereafter whenever the taxicab technology system is inoperable for not more than forty-eight (48) hours following the filing of an incident report with the authorized taxicab technology service provider as set forth in section 2-26 of this chapter, made the appropriate written trip record entry, and the driver has further locked both rear doors;

(6) the driver is discharging his last passenger or [passenger] passengers prior to going off duty, [and] has already illuminated his "Off Duty" sign and transmitted the relevant information to an electronic database for entry on the electronic trip record or, until [such time when] a taxicab is required to be equipped with [data collection and transmission equipment as described in §3-06 of the Taxicab Specifications] the taxicab technology system as defined in section 2-01 of this chapter, and thereafter whenever the taxicab technology system is inoperable for not more than forty-eight (48) hours following the filing of an incident report with the authorized taxicab technology service provider as set forth in section 2-26 of this chapter, made the appropriate written trip record entry;

Section 22. Subdivisions (a) and (b) of section 2-52 of chapter 2 of Title 35 of the Rules of the City of New York are amended to read as follows:

§2-52 Off-Duty Procedure.

(a)  Before going off duty a driver shall transmit the relevant information to an electronic database for entry on the electronic trip record[,] or, until [such time when] a taxicab is required to be equipped with [data collection and transmission equipment as described in §3-06 of the Taxicab Specifications] the taxicab technology system as defined in section 2-01 of this chapter, and thereafter whenever the taxicab technology system is inoperable for not more than forty-eight (48) hours following the filing of an incident report with the authorized taxicab technology service provider as set forth in section 2-26 of this chapter, shall enter on his or her written trip record the time, place and reason for going off duty; he or she shall illuminate the

14

"Off Duty" light or display a "Relief Time" sign inside the windshield and visible from the street and he or she shall lock the rear doors.

(b) Upon completion of the off duty activity a driver shall immediately transmit the relevant information to an electronic database for entry on the electronic trip record or, until [such time when] a taxicab is required to be equipped with [data collection and transmission equipment as described in §3-06 of the Taxicab Specifications] the taxicab technology system as defined in section 2-01 of this chapter, and thereafter whenever the taxicab technology system is inoperable for not more than forty-eight (48) hours following the filing of an incident report with the authorized taxicab technology service provider as set forth in section 2-26 of this chapter, enter on his or her written trip record the time thereof[,]. The driver shall then turn off the "Off Duty" light or remove the "Relief Time" sign and return to service.

Section 23. Subdivisions (a) and (b) of section 2-66 of chapter 2 of Title 35 of the Rules of the City of New York are amended to read as follows:

§2-66 Cooperating with TLC.

(a) A driver shall, at all times, cooperate with all law enforcement officers, authorized representatives of the Commission, [and] the NYC Department of Investigation, and dispatchers at public transportation terminals and at authorized group-ride taxi lines, and shall comply with all their reasonable requests, including but not limited to giving, upon request, his or her name and taxicab driver's license number and exhibiting the rate card, the required electronic or written trip record and, when the taxicab is required to be equipped with the taxicab technology system as defined in section 2-01 of this chapter, if off duty produce the off-duty code receipt, and other documents required to be in his or her possession.

(b) A driver shall promptly answer and comply as directed with all questions, communications, directives and summonses from the Commission or its representatives and the NYC Department of Investigation or its representatives. A driver shall produce his or her taxicab driver's license and DMV license, required electronic or written trip records and, when the taxicab is required to be equipped with the taxicab technology system as defined in section 2-01 of this chapter, if off duty produce the off-duty code receipt, or other documents whenever the Commission requires him or her to do so.

Section 24. Section 2-86 of Chapter 2 of Title 35 of the Rules of the City of New York is amended by adding new penalties labeled §2-26(f)(i), (f)(ii), 2-26(g), §2-32(c) and §2-45(c) as follows:

| Rule No. | Penalty | Personal Appearance Required |
|---|---|---|
| | . . . . | |
| §2-26(f)(i) | $250 and suspension until compliance. | Yes |
| §2-26(f)(ii) | $250 and suspension until compliance. | Yes |

15

| §2-26(g) | $100 | No |
|---|---|---|
| | . . . . | |
| §2-32(c) | First violation: $200; Second violation: $300; Third violation: $500; In addition to the penalty payable to the Commission, the administrative law judge may order the driver to pay restitution to the passenger, equal to the excess amount that was charged to the passenger. | Yes |
| | . . . . | |
| §2-45(c) | $150-350 | Yes |

Section 25. Subdivision (e) of section 3-03 of chapter 3 of Title 35 of the Rules of the City of New York is amended by adding a new paragraph (6) and by amending paragraphs (7) and (8), to read as follows:

(e) Vehicle Modifications for Taxicab Service.

. . . .

(6) [Repealed] Definitions.

**Taxicab technology service provider.** A "taxicab technology service provider" is a vendor who has contracted with the Commission to install and maintain the taxicab technology system in taxicabs.

**Taxicab technology system.** The "taxicab technology system" is hardware and software that provides the following four core services (collectively "four core services"): (i) credit, debit and prepaid card payment required by section 3-03(e)(7) of this chapter, (ii) text messaging required by section 3-03(e)(8) of this chapter, (iii) trip data collection and transmission required by section 3-06 of this chapter, and (iv) data transmission with the passenger information monitor required by section 3-07 of this chapter.

(7) Credit Card Acceptance Capability. Each taxicab that is required to be equipped with the taxicab technology system as defined in section 3-03 of this chapter must be capable of accepting all major credit [cards] and debit cards which are accepted by such taxicab technology system as payment for fares. This specification shall be implemented [as agreed upon between the Taxi and Limousine Commission and the authorized contractor(s) on a date certain to be set by the Commission] no later than the compliance date set forth in section 1-01 of this title.

16

(8) Text [Message] <u>Messaging</u> Equipment. Each taxicab <u>that is required to be equipped with the taxicab technology system as defined in section 3-03 of this chapter</u> must be equipped with <u>text messaging</u> equipment [approved by the Chairperson capable of] enabling the driver to receive and send text messages [in a format approved by the Chairperson]. No [Text Message Equipment] <u>text messaging equipment</u> shall be installed unless it has been [approved by the Chairperson, based upon a determination] <u>provided by a taxicab technology service provider</u> and [that] the equipment conforms with [the] specifications [as] set forth herein, meets appropriate safety standards, and fulfills the intended purposes for such equipment. No [Text Message Equipment] <u>text messaging equipment</u> shall be used in contravention of TLC Rules[. No Text Message Equipment shall be used] <u>or</u> for dispatch purposes. This specification shall be implemented [as agreed upon between the Taxi and Limousine Commission and the authorized contractor(s) on a date certain to be set by the Commission] <u>no later than the compliance date set forth in section 1-01 of this title.</u>

Section 26. Paragraph (24) of subdivision (a) of section 3-04 of chapter 3 of Title 35 of the Rules of the City of New York is amended, and new paragraphs (25) and (26) are added, to read as follows:

(a) The Unit must:

.    .    .    .

(24) be capable of calculating and displaying [either of two alternative rates of fare. In addition to displaying] the <u>regular metered</u> rate of fare [as] required by [Owner's Rule] <u>section</u> 1-70 <u>of this title,</u> [the meter unit shall also be capable of displaying instead] the flat rate of fare for a trip from Kennedy Airport to Manhattan <u>or from Manhattan to Kennedy Airport,</u> as required by [Owners Rule] <u>section</u> 1-69<u>(a) of this title, the rate of fare for a trip to or from Newark Airport, as required by section 1-73 (c) of this title, the rate of fare for trips to Nassau and Westchester counties, as required by section 1-73(b) of this title, the negotiated flat fares to points outside New York City other than the Newark Airport and Westchester and Nassau counties, as required by section 1-73(b) of this title, and the flat fares per person for group rides, as required by section 1-71 of this title.</u>

<u>(25) for any taxicab required to be equipped with the taxicab technology system as defined in section 3-03 of this chapter, be capable of transferring data to the taxicab technology systems of all taxicab technology service providers which have chosen such taximeter, in order to allow credit and debit card payment required by section 3-03(e)(7) of this chapter, text messaging required by section 3-03(e)(8) of this chapter, trip data collection and transmission required by section 3-06 of this chapter and communication with the passenger information monitor required by section 3-07 of this chapter. This specification, unless the taxicab is exempt pursuant to section 1-11(g) of this title, shall be implemented no later than the compliance date set forth in section 1-01 of this title.</u>

<u>(26) use switches, wiring and wire caps in all connections to the taximeter harness, roof light wires and pulse wires that meet specifications of the Society of Automotive Engineers, where such specifications are applicable. All of the taxicab technology system ports</u>

and peripheral connections shall be physically secured from tampering that could disrupt the functionality or compromise the integrity of the taximeter.

Section 27.  Subdivision (a) of section 3-06 of Chapter 3 of Title 35 of the Rules of the City of New York is amended to read as follows:

§3-06 Specifications for the Collection and Transmission of Required Trip Data.

(a) All vehicles, except as provided in section 1-11(g) of this title, shall comply with the data collection and transmission requirements of this [S]section. This specification shall be implemented [as agreed upon between the Taxi and Limousine Commission and the authorized contractor(s) on a date certain to be set by the Commission] no later than the compliance date set forth in section 1-01 of this title.

Section 28. Subdivision (a), paragraphs (ii), (iii), (iv) and (v) of subdivision (b) and subdivision (c) of section 3-07 of chapter 3 of Title 35 of the Rules of the City of New York are amended, and a new subdivision (d) is added, to read as follows:

§3-07 Passenger Information Monitor.

(a) All vehicles, except as provided in section 1-11(g) of this title, shall be equipped with a [P]passenger [I]information [M]monitor which meets all the requirements of this section. This specification shall be implemented [as agreed upon between the Taxi and Limousine Commission and the authorized contractor(s) [on a date certain to be set by the Commission] no later than the compliance date set forth in section 1-01 of this title.

(b) The [P]passenger [I]information [M]monitor shall have the following minimum specifications or capabilities:

.    .    .    .

(ii) [Be of a size and construction, and placed in a location as approved by the Chairperson]  Be provided with a screen that is no less than ten (10) inches measured diagonally and placed in the rear passenger compartment of the taxicab; provided, however, for hybrid electric vehicles and other small clean air or low emission vehicles without a partition, licensed by the Commission for use as taxicabs, the screen size may be less than ten (10) inches but not less than five and one-half (5½) inches measured diagonally;

(iii) Display a map [agreed upon between the TLC and the authorized vendor(s)] that indicates the current location of the vehicle as well as the route the vehicle has traveled from the point of trip initiation to the point of trip destination or termination;

(iv) Display [only] without limitation the following: TLC Public Service Announcements (PSAs) including but not limited to the Passenger Bill of Rights, the Flat Fare Notice and any other TLC PSAs as designated by the Chairperson and, at the medallion owner's option, limited media content, which may include commercial advertising and commercial

sponsorships as enumerated in the contract(s) between the TLC and [approved vendor(s)] taxicab technology service provider(s);

        (v) Display itemized metered fare information at destination or termination  of trip;

    .   .   .   .

        (c) No [P]passenger [I]information [M]monitor or related equipment shall be installed unless it has been [agreed upon between the TLC and the authorized contractor] provided by an authorized taxicab technology service provider on or before [a date certain to be set by the Commission based upon a determination by the Chairperson that the unit and equipment conforms with the specifications as set forth herein, meets appropriate safety standards and fulfills the intended purposes for such equipment] the compliance date set forth in section 1-01 of this title.

        (d) If the credit/debit card acceptance equipment is not operational, but the passenger information monitor is operational, the  passenger information monitor shall display the message, "Credit Card System Currently Not Available."

        Section 29.  Section 12-01 of chapter 12 of Title 35 of the Rules of the City of New York is amended by adding three new definitions to read as follows:

§12-01 Definitions.

 **Merchant.** A "merchant" is an individual or business entity licensed by the Commission that contracts with a merchant bank provider of credit/debit card services and other merchant account related services, which merchant bank provider is approved by the Commission as a subcontractor to  one or more taxicab technology service providers for the purpose of providing in-cab payment  of taxicab fares, surcharges, tolls and tips by credit/debit cards.

**Taxicab technology service provider.** A "taxicab technology service provider" is a vendor who has  contracted with the Commission to install and maintain the taxicab technology system in taxicabs.

**Taxicab technology system.**  The "taxicab technology system" is hardware and software that provides the following four core services (collectively "four core services"): (i) credit/debit card payment required  by section 3-03(e)(7) of this title, (ii) text messaging required by section 3-03(e)(8) of this title, (iii) trip data collection and transmission required by section 3-06 of this title, and (iv) data transmission with the passenger information monitor required by section 3-07 of this title.

        Section 30.  Subdivisions (m) and (q) and paragraph (1) of subdivision (r) of section 12-06 of Chapter 12 of Title 35 of the Rules of the City of New York are amended, and a new subdivision (u) is added, to read as follows:

§12-06 Standards of Conduct.

    .   .   .   .

(m) An agent shall not dispatch a taxicab unless all equipment, including brakes, tires, lights and signals are in good working order and meet all requirements of the New York State Vehicle and Traffic Law [and], the Commission, [Taxicab Specifications] section 3-03 and/or 3-03.1 and 3-03.2 of this title and these rules.

.    .    .    .

(q) An agent shall not tamper with, alter, repair or attempt to repair a taximeter or any seal affixed thereto by a licensed taximeter repair shop or another authorized facility, or the taxicab technology system as defined in section 12-01 of this chapter, or alter, repair or attempt to repair any cable mechanism or electrical wiring of a taximeter or taxicab technology system, or make any change in a vehicle's mechanism or its tires which would affect the operation of the taximeter or of the taxicab technology system.

(r)  An agent shall not dispatch a taxicab unless the following are present in the taxicab:

(1)  the driver's written trip record, also known as a "trip sheet" until the taxicab is required to be equipped with the taxicab technology system as defined in section 12-01 of this chapter, and thereafter whenever the taxicab technology system is inoperable for not more than forty-eight (48) hours following the filing of an incident report with the authorized taxicab technology service provider, as set forth in subdivision (u) of this section;

.    .    .    .

(u)  Responsibilities of agent with regard to the taxicab technology system. (1) (i) For any taxicab that is required to be equipped with the taxicab technology system, such equipment shall at all times be in good working order and each of the four core services shall at all times be functioning. (ii) In the event of any malfunction or failure to operate of such taxicab technology system, the agent shall file an incident report with the authorized taxicab technology service provider promptly and  in no event more than two (2) hours following the agent's discovery of such malfunction or failure to operate or  such time as the agent reasonably should have known of  such malfunction or failure to operate. If the driver or taxicab owner previously filed a timely incident report regarding such malfunction or failure to operate, the agent shall not be required to file a separate incident report but shall obtain an incident report number from the driver, owner or taxicab technology service provider.  Upon instruction from the owner, the agent shall meet the appointment for repair scheduled by the authorized taxicab technology service provider  following the filing of an incident report with  such authorized taxicab technology service provider. A taxicab  in which any of the four core services of the taxicab technology system, or any part thereof, are not functioning shall not operate  more than forty-eight (48) hours following the timely filing of an incident report by the owner, driver or agent.

(2) The agent for any taxicab that is required to be equipped with the taxicab technology system shall equip such taxicab, except as provided in section 1-11(g) of this title, with a taxicab technology system as set forth in sections 3-03(e)(7) and (8), 3-06 and 3-07 of this title.

(3) An agent  for any taxicab requiring six (6) or more repairs of the taxicab technology system in any thirty (30) day period  shall promptly take such vehicle for inspection to or schedule an inspection with the   Commission's Safety and Emissions Facility. Such requirement shall not apply to the agent if compliance is made by the owner or driver of such vehicle.

(4) A merchant who is an agent may charge a mark-up to a driver licensed by the Commission of not more than five percent (5%) of the total credit/debit card charges incurred during the driver's shift.

Section 31.  Section 12-08 of chapter 12 of Title 35 of the Rules of the City of New York is amended by adding a penalty labeled §12-06(m) and penalties labeled §12-06(u)(1)(i), (u)(1)(ii), (u)(2), (3) and (4) as follows:

| Rule No. | Penalty | Personal Appearance Required |
|---|---|---|
| | . . . | |
| §12-06(m) | $100 | No |
| §12-06(u)(1)(i) | $250 and suspension until compliance | Yes |
| §12-06(u)(1)(ii) | $250 and suspension until compliance | Yes |
| §12-06(u)(2) | $1000 and suspension until compliance | Yes |
| §12-06(u)(3) | $250 | No |
| §12-06(u)(4) | First violation: $200. Second violation: $300. Third violation: $500. In addition to the penalty payable to the Commission, the administrative law judge may order the agent to pay restitution to the driver, equal to the excess amount that was charged to the driver. | Yes |

Section 32.  Section 15-01 of Chapter 15 of Title 35 of the Rules of the City of New York is amended by adding new subdivision (h),  relettering existing subdivisions (h) and (i) as (i) and (j), adding subdivisions (k) and (l) and relettering existing subdivisions (l) through (n) inclusive as (m) through (q) inclusive, to read as follows:

21

§15-01 Definitions.

(h) **Representative.**   "Representative" shall mean an individual, partnership, limited liability company or corporation appointed by a manufacturer of taximeters required to be licensed under this chapter to hold a license on behalf of such manufacturer and to carry out such manufacturer's duties and responsibilities as a licensee under this chapter.

.     .     .

(k) **Taxicab technology service provider.** A "taxicab technology service provider" is a vendor who has  contracted with the Commission to install and maintain the taxicab technology system in taxicabs.

 (l) **Taxicab technology system.**  The "taxicab technology system" is hardware and software that provides the following four core services (collectively "four core services"): (i) credit, debit and prepaid card payment required by section 3-03(e)(7) of this title, (ii) text messaging required by section 3-03(e)(8) of this title, (iii) trip data collection and transmission required by section 3-06 of this title, and (iv) data transmission with the passenger information monitor required by section 3-07 of this title.

            Section 33.  Section 15-02 of Chapter 15 of Title 35 of the Rules of the City of New York is amended to read as follows:

§15-02 Unlicensed Business Activities Prohibited.

        (a) No individual, partnership, [or] corporation or other business entity shall manufacture, sell, install, repair, adjust, or calibrate taximeters or install or repair seals, wiring harnesses or other equipment relating to the operation of a taximeter or roof light for use upon any licensed vehicle in the City of New York unless he, she or it holds a current, valid taximeter business license issued by the [c]Commission, which license is neither suspended or revoked.  No individual, partnership, corporation or other business entity shall manufacture, sell, install, repair, adjust, calibrate or maintain a taxicab technology system that is not provided by a taxicab technology service provider as defined in section 15-01 of this chapter.

        (b) After  July 18, 2007, no taximeter may be used in a taxicab licensed by the Commission unless the manufacturer thereof has been licensed by the Commission under these rules.  Any manufacturer required to obtain a license under this subdivision must obtain such license separately and in addition to any other licenses such person or entity may hold from the Commission, including other licenses held for a taximeter business.  A manufacturer required to be licensed under this chapter may appoint a representative to hold such license.  Except as otherwise provided in this subdivision, such representative shall be required to meet all applicable conditions and qualifications of licensure provided by this chapter and must be authorized by appointment to act on behalf of the manufacturer pursuant to this chapter and to bind the manufacturer to the fulfillment of the duties and responsibilities of a licensee under this chapter, and the manufacturer, by such appointment, agrees to be so bound and shall be deemed

to be bound hereby. Such licenses which a representative is appointed to hold shall be separate and in addition to any other licenses such person or entity may hold from the Commission, including other licenses held for a taximeter business. In the event a manufacturer chooses to appoint a representative to hold a license:

(1) The representative must have, and shall be deemed to have, the ability, on behalf of the manufacturer, to fulfill the requirements and obligations of a manufacturer, under this chapter, including the ability to implement the requirements of section 15-44 of this chapter as to the manufacturer, and to ensure that all persons and entities authorized to sell, install, or service taximeters manufactured by the manufacturer in taxicabs licensed by the Commission comply with all applicable provisions of these rules, except that such representative shall not be required to meet the requirements of section 15-12 of this chapter relating to premises and equipment of the manufacturer's manufacturing operations; notwithstanding the appointment of the representative, the manufacturer and its representative shall be jointly responsible for fulfilling the duties and responsibilities of a manufacturer as required by this chapter, including those set forth in section 15-44 of this chapter and the manufacturer's appointment of a representative shall not relieve it of responsibility for compliance;

(2) The manufacturer must inform the Commission at any time it appoints a representative and provide a copy of the appointment together with the name, address and license numbers, if any, of the representative. In addition, as a condition of renewal of such manufacturer's license, the manufacturer shall provide the Commission annually during the month of January with the name of the representative authorized by the manufacturer to hold a license from the Commission on behalf of the manufacturer, including the address, and, if already licensed by the Commission, license number(s) of such representative; and

(3) Each representative appointed under this subdivision must apply to hold a license under this chapter and must meet all applicable standards, criteria, and conditions of licensure, and must further provide to the Commission with its application for a license or renewal thereof an acceptance of the appointment and acceptance of the responsibilities imposed on such manufacturer by this chapter, except that such representative shall not be required to meet the requirements of section 15-12 of this chapter relating to premises and equipment of the manufacturer's manufacturing operations and only individual representatives, partners of a representative, members of a representative or officers of a representative shall be required to be fingerprinted under section 15-03(e) of this chapter.

Section 34.  Subdivision (a) of section 15-20 of Chapter 15 of Title 35 of the Rules of the City of New York is amended to read as follows:

§15-20 Personal conduct of Licensees.

(a) A taximeter business owner, while performing his, her or its duties and responsibilities as a taximeter business owner, shall not commit or attempt to commit, alone or in

concert with another, any act of fraud, misrepresentation, or larceny.  Examples of fraud, larceny or misrepresentation include, but are not limited to, calibration of a fare other than that set by the [c]Commission; adjustment of the tire size, driving axle, pinion gear, transducer, wiring, or other equipment, for the purpose of generating an inaccurate signal of time or distance into the taximeter or the taxicab technology system; [or] the manufacture, sale or installation of any device which is either designed to or does generate a false or inaccurate signal into the taximeter or the taxicab technology system; or the falsification of taxicab technology system records.

Section 35.  The introductory sentence of subdivision (a) and paragraph (1) of subdivision (a) of section 15-29 of Chapter 15 of Title 35 of the Rules of the City of New York is amended to read as follows:

(a)  A taximeter business shall notify the [c]Commission by telephone immediately and in writing within twenty-four (24) hours, of any of the following occurrences:

(1) A taximeter  which the taximeter business knows or has reason to know has been reported to the Commission as lost or stolen or a taxicab technology system which the taximeter business knows or has reason to know has not been provided by a taxicab technology provider as defined in section 15-01 of this chapter has been presented to the taximeter business for installation, repair, adjustment or calibration [which the taximeter business knows or has reason to know has been reported lost or stolen to the commission].

Section 36. Section 15-43 of Chapter 15 of Title 35 of the Rules of the City of New York is amended by adding new penalties labeled §15-44(a) and (b), to read as follows:

| Rule No. | Penalty | Personal Appearance Required |
|---|---|---|
| | · · · · | |
| §15-44(a) and (b) | First violation: $10,000 Second violation: revocation of license | Yes |

Section 37. Chapter 15 of Title 35 of the Rules of the City of New York is amended by adding a new section 15-44, to read as follows:

Section 15-44 Cooperation with Taxicab Technology Service Providers.

Each taxicab technology service provider (as that term is defined in section 15-01 of this chapter) shall, with the approval of the Commission, choose one or more Commission-approved taximeters to interface and communicate data with its taxicab technology system, and shall communicate such choice or choices in writing to the Commission. When a taximeter business that manufactures taximeters approved by the Commission has been notified by the Commission that  its taximeter has been chosen by a taxicab technology service provider to interface and communicate data with the taxicab technology system of

24

such taxicab technology service provider, such taximeter business shall choose either of the following options: (a) Such taximeter business shall provide to such taxicab technology service provider such information relating to the design and inner operation of the taximeter that is necessary for such taxicab technology service provider to perform the work of effecting an interface and communication of data between its taxicab technology system and the taximeter. A taximeter business may require as a condition of providing such information to a taxicab technology service provider that such taxicab technology service provider execute a non-disclosure agreement that is substantially similar in form to Attachment NDA to the agreement between the Commission and the taxicab technology service providers or as agreed upon between the parties; or

(b) Such taximeter business shall, (i) for the purpose of receiving from such taxicab technology service provider such information relating to the design and inner operation of such provider's taxicab technology system, within five business days of notification by the Commission pursuant to this section that the taximeter of such taximeter business has been chosen by such provider to interface and communicate data with such taxicab technology system, execute a non-disclosure agreement substantially similar in form to Attachment NDA to the agreement between the Commission and the taxicab technology service providers or as agreed to between the parties, (ii) perform the work of effecting an interface and communication of data between such taximeter and such taxicab technology system, (iii) ensure that upon installation of such taxicab technology system and thereafter such interface and communication of data are effective, and (iv) submit to the Commission on an annual basis a signed certification that the taximeter business has effected and continues to effect an interface and communication of data between such taxicab technology system and such taximeter. Each failure on the part of a taximeter business that manufactures taximeters to cooperate with a taxicab technology service provider as provided in subdivision (a) or subdivision (b) of this section shall constitute a separate violation of this rule.

No taximeter manufactured by a taximeter business shall be used with any taxicab technology system unless such taximeter business is in compliance with this section insofar as it has cooperated to effect an interface of its taximeter with the taxicab technology systems of all taxicab technology service providers that chose such taximeter.

## Statement of Basis and Purpose

These rules revise the existing Taxi and Limousine Commission ("TLC") rules applicable to the requirements of the taxicab technology system, which consists of hardware and software that allows credit and debit card payment of taxicab fares, text messaging to taxicab drivers, electronic taxicab trip data collection and transmission, and data transmission to a passenger information monitor. The rules provide exemptions from the system installation requirement to taxicabs that will be retired within six (6) months following the installation date, and provide that any taxicab technology service provider who has contracts for installation of the taxicab technology systems in more than three thousand (3,000) taxicabs may, upon prior written approval from the Chairperson, or his or her designee, extend the date for each taxicab to receive such taxicab technology system to the next date that each such taxicab is due for inspection at the

TLC's Safety and Emissions Facility following February 1, 2008. The taxicab technology system is in development by vendors pursuant to contracts with the TLC. These rules require installation of the taxicab technology system in taxicabs on the date of the first regularly scheduled inspection for each taxicab on or after October 1, 2007, unless the taxicab is exempt.

The rules allocate responsibility for the operation and maintenance of the taxicab technology system among the taxicab driver, owner and agent, and require the driver, owner and agent to report malfunctions in the taxicab technology system within prescribed times after the malfunction is discovered or should reasonably have been discovered.  Provided that those reporting requirements are met, the rules allow continued operation of the taxicab, with a written trip sheet if the electronic trip data collection is malfunctioning, for up to 48 hours after the malfunction is reported. If the taximeter fails to operate, however, the taxicab is prohibited from picking up a passenger. Further, if the taxicab technology system in a particular taxicab requires six or more repairs within any thirty-day period, the taxicab must promptly be brought for inspection to, or an inspection must be scheduled with, the TLC Safety and Emissions Facility. Pursuant to the contracts between the Commission and the taxicab technology service providers, the service providers are subject to audits by the City and the Commission, and they are required to provide the City and the Commission with periodic reports and reasonable access to the service providers' performance measurement and management reporting tools.

The rules increase from two to six the number of different fare calculations that the taximeter must be capable of processing.  Existing rules require that the taximeter be capable of processing the regular fare pursuant to section 1-70 of the TLC rules, and the flat fare between Kennedy Airport and Manhattan pursuant to section 1-69 of the TLC rules.  These rules require that the taximeter be capable of processing the fare to Newark Airport pursuant to section 1-73 of the TLC rules, the adjustment of the metered fare to points in Westchester and Nassau counties pursuant to section 1-73(b) of the TLC rules, the negotiated flat fares to points outside New York City other than the Newark Airport and Westchester and Nassau counties pursuant to section 1-73(a) of the TLC rules, and flat fares per person for group rides pursuant to section 1-71 of the TLC rules.

The rules also require taxicabs equipped with taxi technology systems to display signs or logos identifying the credit and debit cards that are accepted for payment on the passenger information monitor screen and to permit advertising on the passenger information monitor screen.

The rules also require that the taxicab technology system ports and peripheral connections be secured from tampering and that the connections to the taximeter harness, roof light wires and pulse wires use switches, wiring and wire caps meeting the specifications of the Society of Automotive Engineers.

The rules at Sections 1-85(b) and 12-06(u)(4) contained a cap of 5 % that medallion owners, or their agents, would be able to charge drivers for credit/debit card transactions. The rules set forth terms that explicitly require that each taximeter approved by the Commission be capable of transferring data and communicating with the taxicab technology system of all taxicab technology service providers that have chosen to interface with the taximeter. Section 15-44, added by the rules, requires that taximeter businesses which

manufacture taximeters make available to taxicab technology service providers certain of their taximeter specifications, subject to appropriate confidentiality obligations, to enable the taxicab technology service providers to effect an interface between their systems and each taximeter; or, alternately, that the taxicab technology service providers make available to taximeter businesses which manufacture taximeters certain of their system specifications, again subject to appropriate confidentiality obligations, to enable the taximeter businesses to effect an interface between their taximeters and each of the taxicab technology systems.

The rules also make clear that, effective July 18, 2007, manufacturers of taximeter devices must be licensed by the TLC in order for their taximeters to be installed or maintained in taxicabs licensed by the TLC. Development and implementation of the taxicab customer service enhancements has made it clear that manufacturers of taximeters must work with the taxicab technology service providers, which are TLC contractors, to ensure that all equipment interfaces properly. The Commission achieves this purpose by requiring manufacturers to hold a license and to implement the interface requirements set forth in section 15-44 of the TLC rules.

To alleviate difficulties in licensing manufacturing entities which may not be located in New York City, the Commission allows that a manufacturer may meet its licensing requirement by designating a representative to hold a license on its behalf. Any representative designated must hold, and will be deemed to hold, all the necessary authority to carry out the manufacturer's duties as a licensee, including duties regarding interface requirements. The licensing of a representative shall not relieve a manufacturer of its duties with respect to such requirements.



 **NEW YORK CITY TAXI & LIMOUSINE COMMISSION**

**Office of the Chief of Staff**
40 Rector Street, 5th Floor
New York NY 10006
Tel: 212-676-1017, Fax: 212-676-2002

Matthew W. Daus, Commissioner/Chair

July 30, 2007

6C36
**PIERRE, JEAN VAILLANT
1094 NEW YORK AVENUE B7
BROOKLYN, NY 11203**

### Final Notice

**Medallion owner,**

**This is notice that on august 1, 2007, you are required to sign up with a Vendor
To install the technology systems in your vehicle.**

**If you have not signed a contract by august 1, 2007, the TLC will mail you a
Summons. You will be subject to a fine and your medallion may be
suspended.**

Sincerely yours,

Ira Goldstein
Chief of Staff



**TLC**

**NEW YORK CITY
TAXI & LIMOUSINE
COMMISSION**

**Uniformed Services Bureau**
24-55 Brooklyn Queens Expressway West
Woodside, NY 11377

Matthew W. Daus, Commissioner/Chair

*Naukeen Rashid*

Today's Date:    8/22/2007

ALEXANDRE,LOUBERT
241-30 145 AVENUE
ROSEDALE, NY 11422

Your Medallion #:    1T58

## THIS IS SUMMONS #  PIM0020

You are hereby charged with a violation of the N.Y.C. Taxi and Limousine Commission's (TLC) Owners Rules, Sec. 1-11(g), in that as of August 1, 2007, you failed to sign a contract with an authorized taxicab technology service provider to buy, lease, rent or use a Taxicab Technology Enhancements System and Service for each medallion you own.

You are hereby summoned to appear for a hearing at the TLC's Adjudications Division, located at 32-02 Queens Boulevard, Long Island City, New York 11101 at **10:20:00 AM**   on  **9/5/2007**

### WHEN APPEARING AT YOUR HEARING YOU HAVE THE FOLLOWING RIGHTS / OBLIGATIONS:

**YOU MUST APPEAR IN PERSON TO ANSWER THIS SUMMONS. THE PENALTY FOR VIOLATION OF SECTION 1-11(g) OF THE TLC'S MEDALLION OWNER'S RULES IS $250 AND SUSPENSION UNTIL COMPLIANCE. YOUR FAILURE TO APPEAR WILL BE CONSIDERED A DEFAULT.**

**IF YOU HAVE A CONTRACT OR CONTRACTS WITH AN AUTHORIZED TAXICAB TECHNOLOGY SERVICE PROVIDER, YOU MUST BRING AN ORIGINAL OR ORIGINALS OF THE CONTRACT TO THE HEARING.**

1. You must bring with you an original dated contract for the Taxicab Technology Enhancements System and Service for each medallion you own, signed by an authorized contractor and you or your taxicab agent. If your taxicab agent signed on your behalf, you must also bring your original taxicab agent contract.

2. You may be accompanied by an attorney or a non-attorney representative duly authorized by the Commission. If you are a corporation, it may be represented by an officer, director, or employee of the corporation designated as an agent for the corporation. If you are a partnership, it may be represented by any partner. You may also bring a witness(es) and any evidence that supports your case.

3. If you are found in violation of Section 1-11(g), your license will be suspended until compliance and all fines must be paid in cash or by certified check, money order or credit card on the date that the fine is imposed. Failure to pay any fine imposed will result in further grounds to suspend your license(s) and may result in other actions to collect such fine.

4. Failure to appear for your scheduled hearing without having been granted an adjournment or withdrawal of the complaint by the TLC will result in a hearing being held and a decision rendered in your absence, which may result in a fine and/or suspension of your license(s).

5. Any request for an adjournment must be made in person at the TLC's Adjudications Division at least five (5) business days prior to and excluding the hearing date.

COMPLAINANT: Michael Friscia

"I certify that this is a true copy of a summons inserted by me in an envelope addressed to the named respondent at the address set forth thereon and deposited in the normal course of business with the TLC mail service."

TLC Employee Signature: _____     Date: **8/23/07**

Government Services
& Information for NYC
www.nyc.gov/taxi

*Naureen Kashir* (handwritten)

I, Lev Nathaniel Kropsky, Special Assistant to the Chief of Staff of the Taxi and Limousine Commission, certify that among my primary duties and responsibilities are those pertaining to the Outreach of the Technology Enhancement Project to the taxicab industry.

The purpose of the Outreach is to publicize the compliance deadlines of medallion owners to sign contracts to buy, lease, rent or use the Taxicab Technology Enhancement System and Service.

Outreach has included multiple mailings which were sent to all medallion owners at the addresses listed in TAMIS, a TLC data base.

The mailings included both mass marketing mailings from each of the four Enhancement Vendors to all medallion owners in May of 2007, which included Industry Notices for the approved providers of the technology systems and services and informing of the August 1, 2007 deadline to contract, and a Final Notice of the August 1, 2007 Sign-Up Deadline which was sent on July 30, 2007, to all medallion owners who had not yet signed a contract with a vendor. The Final Notice informed the medallion owners that Summonses would be issued to those who were not in compliance.

Additionally TLC held various Outreach events at its Woodside facility. These included a Tech Enhancement Seminar on September 30, 2006 as well as Tech Vendor Expos on June 25, 2007 and July 10, 2007. Each of these seminars was publicized on the TLC website. The notice of the third seminar contained a reminder of the August 1, 2007 Sign-Up Deadline.

Further Woodside Outreach included a feedback session with drivers of the 200 beta test cars on May 7, 2007, and vendor marketing and showcasing of test vehicles on multiple dates at the Woodside inspection lanes beginning on May 7, 2007.

Furthermore, Outreach at JFK was held April, May, June, and July, 2007.

Outreach was held at LGA in April and May 2007.

Outreach was held at Fleets on various days in April and May, 2007.

Finally, the TLC posted an Industry Notice dated June 7, 2007 on the TLC website advising of the August 1, 2007 deadline for medallion owners to contract and explaining to medallion owners the technology program and their responsibilities. This June 7, 2007 Industry Notice was preceded by three notices dated May 25, 2007, June 1, 2007, and June 6, 2007 advising of authorized providers of the technology systems services and the August 1, 2007 deadline to contract. A June 26, 2007 Industry Notice posted on the TLC website again provided the August 1, 2007 deadline.

The four authorized vendors have submitted copies of signed contracts and lists of medallions that have signed up for the Taxicab Technology System and Service. Approximately 12,850 medallion owners signed contracts.

On August 22, 2007, in the ordinary course of business, TLC staff for the Taxicab Technology Enhancement System reviewed those listings and the list of medallions that are in storage. TLC staff compared the authorized vendors' lists with the TLC database and extracted medallion numbers of owners who have not contracted for the system and services. The Respondent is not on the vendors' lists, the medallion is not in storage and the TLC has been provided with no record that the medallion owner has signed a contract for a system and services.

A list of these medallions owners was sent to the Uniform Service Bureau of TLC on August 22, 2007 to issue summonses for failure to comply with Rule 1-11(g).

Lev Nathaniel Kropsky _Lev Nathaniel Kropsky_ (signature)

Date Signed _August 22, 2007_ (handwritten)