.

<u>Alexandre et al. v. The New York City Taxi and Limousine Commission et al.</u>
07 Civ. 8175 (RMB)


# EXHIBIT E

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------ x
    :
    :
LOUBERT ALEXANDRE, YVON AUGUSTIN, MAX  :   Case No. 07 Civ. 8175 (RMB)
CHARTELAIN, WILFRED GERMAIN, CLAUDE :
LESSAGE, and JEAN PIERRE, INDIVIDUALLY AS :
OWNERS OF YELLOW CAB MEDALLIONS IN THE :  **AFFIDAVIT IN OPPOSITION TO**
CITY OF NEW YORK AND ON BEHALF OF A :  **PLAINTIFF'S MOTION FOR A**
CLASS OF ALL OWNERS SIMILARLY SITUATED, :  **PRELIMINARY INJUNCTION**
AS WELL AS INDIVIDUALLY, TOGETHER WITH :
MAMNUNUL HAQ and ASIM AKHTAR, AS :
HOLDERS OF HACK LICENSES IN THE CITY OF :
NEW YORK, and the NEW YORK TAXI WORKERS :
ALLIANCE.

Plaintiffs,

- against -

THE NEW YORK CITY TAXI AND LIMOUSINE
COMMISSION,   MATTHEW   DAUS,   AS
COMMISSIONER/CHAIR OF THE NEW YORK CITY
TAXI AND LIMOUSINE COMMISSION, AND THE
CITY OF NEW YORK ,

Defendants.

------------------------------------------------------------------ x

STATE OF NEW YORK    )
                      ) ss.:
COUNTY OF NEW YORK  )

        AMOS TAMAM,  being duly sworn, deposes and says:

        1.    I am the President and Chief Executive Officer of Verifone Transportation

Systems, Inc. d/b/a Taxitronic ("VTS").  Our company is one of the four vendors that have

contracted with the New York City Taxi & Limousine Commission ("TLC") for the Medallion

Taxicab Technology Enhancements Service project and implementation of the Taxi Technology

System ("TTS").  Of the four vendors, VTS has the largest number of Medallions in the City of

1

New York under contract for the TTS. [1] I respectfully submit this affidavit in support of the

Defendants' opposition to the Plaintiffs' motion for a preliminary injunction

      2.      Beyond the other reasons stated in the City's opposition, VTS will suffer

economic harm if an injunction is issued and the TTS program does not go forward as planned.

VTS has invested significant amounts of time, money and effort in reliance on this program

proceeding including entering into over 5,500 contracts with Medallions to provide TTS

services.

      3.      Since the issuance of the Request for Proposals by the TLC in March of

2005, VTS, its investors and its subcontractors have spent a significant amount of money, time

and resources to make this program a success. The contract with the TLC was signed by VTS on

or about January 3, 2006 and became effective on June 19, 2006. Moreover, in reliance of the

contract with the TLC, VTS, its investors and its subcontractors have made significant

investments in infrastructure, inventory and overhead costs.

      4.      Approximately $10,000,000 has been invested in a new building for

offices, a garage for installation and maintenance of the TTS for each Medallion Cab. This

office and garage is equipped with new computers, software and other necessary equipment.

Based on the approximately 5,500 contracts signed with Owners and in reliance on the Contract

with the TLC and the required sign-up and installation dates, VTS has purchased and/or ordered

and committed to production all of the necessary TTS units. On average, each Unit is

approximately $3,100 resulting in an expenditure and/or commitment of over $17,000,000.

      5.      In addition, overhead for operational expenses is approximately $750,000

per month including advertising, professional fees such as legal and accounting, payroll for staff,

---

[1] Based on the contract sign up deadline (August 1, 2007) for the Owners of the Medallions (Owners"), VTS has
approximately 5,500 Medallions of the approximately 13,000 Medallions in the City of New York, under contract
for the TTS.

and on-going requirements of the Contract with the TLC such as insurance coverage's and performance bond premiums.

6.    Any delay in the program will result in not only increased expenditures and costs but will delay any ability for VTS to generate revenue to start to offset all of the costs and expenditures made thus far. Anticipated Monthly revenues once the program begins, will be approximately $3,300 per cab equipped with a VTS TTS. This number is based on anticipated revenues from advertising, equipment payments, service fees, transaction fees and cashiering fees based on all 5500 cabs installed. Any delay in the installations will cause significant harm to achieving these revenue forecasts.

7.    In addition, VTS will suffer significant harm due to the uncertainty caused by the injunction being sought. Any further delay will damage business relationships and/or contracts with advertisers, a key aspect of the revenue generation of the program, which revenue is shared with the many Owners who have not signed on to this class action lawsuit and have agreed to purchase and install the VTS TTS. Without the fixed date of October 1, 2007 that advertisers have relied upon with regard to the program, they may lose the confidence of their customers and sign deals with other types of media and advertising outlets with more certainty as to the "eyeballs" that their ad dollars will capture. Even a short delay could cause such advertisers to move their committed ad dollars to other types of media for many months if not longer and lose interest in an already tight advertising market. If this occurs the economic success of VTS and the entire the program will be significantly harmed.

8.    The riding public must also have absolute certainty as to the start date for universal credit card acceptance. Customers without sufficient cash or who prefer for a variety of reasons to use credit cards ( i.e. business reimbursement) will decide to use other means of transportation. This will not only result in reduced revenue to VTS based on lost credit card fees

3

but also cause the riding public to lose confidence in their ability to use their credit cards for an extended period of time.  The October 1, 2007 start date has been highly publicized so that customers, advertisers, driver and taxi owner have all extensively relied upon this regulatory certainly which will be irreparably damaged by any injunction extending this date.

AMOS TAMAM

Sworn to before me this
⅞ th day of September, 2007

Notary Public

PETER G. COSMAS
Notary Public, State of New York
No. 01CO4594623
Qualified in Suffolk County
Commission Expires May 8, 20 10

4