Alexandre et al. v. The New York City Taxi and Limousine Commission et al.
07 Civ. 8175 (RMB)


# EXHIBIT F

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------X  Index No. 07 CIV 8175

LOUBERT ALEXANDRE, YVON AUGUSTIN, MAX
CHARTELAIN, WILFRED GERMAIN, CLAUDE
LESSAGE, and JEAN PIERRE, INDIVIDUALLY AS
OWNERS OF YELLOW CAB MEDALLIONS IN THE
CITY OF NEW YORK AND ON BEHALF OF A CLASS
OF ALL OWNERS SIMILARLY SITUATED, AS WELL AS
INDIVIDUALLY, TOGETHER WIITH MAMNUNUL
HAQ and ASIM AKHTAR, AS HOLDERS OF HACK
LICENSES IN THE CITY OF NEW YORK AND AS
REPRESENTATIVES ON BEHALF OF A CLASS OF
ALL HOLDERS OF HACK LICENSES IN THE CITY
OF NEW YORK, and the NEW YORK TAXI WORKERS
ALLIANCE,

AFFIDAVIT OF JESSE DAVIS
IN OPPOSITION TO THE
REQUEST FOR A
PRELIMINARY INJUNCTION

Plaintiffs,

- against-

THE NEW YORK CITY TAXI AND LIMOUSINE COM-
MISSION, MATTHEW DAUS, AS COMMISSIONER/
CHAIR OF THE NEW YORK CITY TAXI AND LIMO-
USINE COMMISSION, AND THE CITY OF NEW YORK,

Defendants.

------------------------------------------------------------X

STATE OF NEW YORK    )
                     ) ss.:
COUNTY OF QUEENS     )

JESSE DAVIS, being duly sworn, states under the penalties of perjury:

1. I am the President and Chief Operating Officer of Creative Mobile Technologies, LLC ("CMT" or the "Company").

2957482.1

2. I am submitting this Affidavit in Opposition to the Request for a Preliminary Injunction, which would not merely delay the implementation of the Taxi Technology Enhancement Program ("the Program"), but facilitate its immediate demise.

3. The Program was announced several years ago. Shortly after it was first presented, the forces that are presently opposing its implementation began speaking out against it. Hearings were held, forums were conducted, editorials were written, speeches were made, and campaigns were undertaken debating all of the issues that have now belatedly been submitted to this Court. When all the rhetoric ended, several companies including CMT (Contractor Agent for vendor Mobile Knowledge Corp.) and each of the other vendors decided to make the substantial investment required in order to participate in the very exciting economic opportunities being represented by the Program.

4. It is respectfully submitted that the arguments now being advanced, even if they had merit, because of the untimeliness with which they are being put forward, do not justify the issuance of the Preliminary Injunction. It is also submitted, that from the point of view at least of my Company, the arguments being made totally lack merit and the issuance of a preliminary injunction would exact irreparable harm to our Company from which we would not be able to recover.

5. It is important to note that this Program is a by-product of thousands of hours of attorneys' time, consultants' time and time invested by the vendors, the TLC staff and the City of New York. The very contract which gives rise to the rights and obligations of the four vendors and the City of New York was the result of over a year of drafting and negotiating with New York City's outside counsel specifically retained by the City of New York for its experience

in such contracts. The City and the TLC played the very active role of safeguarding the interest of the medallion owners, agents, drivers and the riding public. To suggest the drivers' interests were not considered, is the utterance of the uninformed.

6. CMT has to date invested $17.1 million and has presently outstanding commitments through year-end to invest additional millions of dollars to the development of its product and the Program, bringing its investment in this Program to over $20 million. The investments have included but are not limited to:

- Bank financing fees
- Research and Development of its technology
- Equipment
- Payroll
- Medical benefits
- Lease of New facility
- Bonds
- Insurance
- Legal fees
- Marketing fees
- Advertising fees
- Consulting fees
- Data Plan Air Service
- Helpdesk related expenses
- Network Control Center
- Network monthly maintenance

7. Over the past three years a virtual new industry and market has been created and with that companies have been formed, substantial debt has been incurred, people have been hired, facilities literally built and an entire technological infrastructure of the most sophisticated nature has been created. Each of these obligations whether they be debt services, payroll, rent, insurance, etc. would continue should the preliminary injunction be issued, with no revenue to support such expenses. In addition, dozens of contracts with third-party

3

2957482.1

suppliers have been committed to by the four vendors in compliance to its contractual obligations - all of which will be in jeopardy and undoubtedly lead to multiple breach of contract claims against each vendor should a preliminary injunction be issued.

8. While we certainly respect every citizen's right to their day in court, it should not come at the substantial and devastating loss to others absent a demonstrable showing of immediate and irreparable harm. It is inconceivable that such a showing can be so demonstrated. Surely, the court needs to properly consider the matter before it and parse the language of the Plaintiffs and separate truth from fiction. By way of example, Plaintiffs suggest that the installation of the equipment is "permanent", nothing could be further from the truth. The equipment has been designed so that it may be de-installed and re-installed for repairs or simply at the end of a contract period should a new vendor be selected. The time to affect such de-installation of the CMT equipment is approximately 60 to 90 minutes at a cost not to exceed $150. To restore the vehicle to its pre-installation condition would additionally require the owner to patch and plug the partition (approximately $50.00) and to recalibrate its meter at a TLC licensed meter shop (approximately $100.00). Clearly not the "permanent" condition espoused by Plaintiffs.

9. We beseech the Court in so considering the instant action to do so in such a manner that preserves and maintains the status quo until such time as the Court has made a decision on the merits. To do otherwise and to grant the request for a preliminary injunction is to effectively grant the relief sought prior to a complete vetting of the issues. The granting of the preliminary injunction will certainly seal the fate of the vendors, all small business concerns who have invested heavily upon the reliance of its contracts duly executed with the City of New

York. The Plaintiffs' issues can be properly considered without exacting such a certain and irreparable harm to the vendors. A review of the Program's brief history supports such a conclusion.

10. To date, CMT has conducted over 2.3 million trips with vehicles duly equipped with the subject enhancements, all of which have been voluntarily installed in advance of the mandated dates for installation. The drivers involved were all independent contractors. Despite the fact that there are more taxis available presently without the enhancements, these drivers have chosen to conduct these trips in vehicles that are equipped with the subject enhancements. In voluntarily selecting the vehicles that have the enhancements, these drivers have not made any claims regarding any potential invasion of privacy nor have they suggested that being given a vehicle with the enhancement was a compromise of any personal liberties or a violation of any constitutional rights. Indeed, our experience is that the drivers who are using these vehicles do so for affirmative reasons, as they appreciate the safety features associated with vehicles so equipped and the benefits associated with the corporate customer using his/her credit card resulting in higher tips for the drivers.

11. If the enhancement Program which has been under debate and discussion for these last several years is suddenly brought to a halt, it is my belief that not only my Company but all companies that are participating vendors in the program, will suffer substantial and irreparable harm. Each of the four vendors has made a substantial investment predicated on one common perception – a robust advertising marketplace. Presently, advertising agents are out pre-selling advertising in this new and exciting medium. Typically, advertising dollars are committed six to twelve months in advance. The imposition of a preliminary injunction halting

the Program, even for just one day, would bring this campaign to a screeching halt and the enthusiasm within the marketplace for committing advertising dollars to this new medium would disappear instantly. The disappearance of the advertising dollars would most assuredly include the disappearance via insolvencies of each of the participating vendors. To grant Plaintiffs' request for a preliminary injunction is to provide Plaintiffs with their ultimate relief: the destruction of the Program. Surely, their issues may be properly considered without exacting such a devastating toll on the vendors.

12. A second issue needs to be considered as well. Assuming hypothetically, that the preliminary injunction was issued, what treatment would be afforded the approximately 2,200 taxicabs currently equipped with the enhancements? These owners have purchased (at substantial cost) new meters that only work with the new technology. New partitions were purchased and custom cut to accommodate the new technology. Surely, they cannot be taken off the road. Moreover, disabling the enhancements would not be an option. It is therefore to be assumed that the 2,200 taxicabs would be permitted to continue to operate and service the riding public. Assuming that is so, where would the harm exist of allowing the slow and laborious task of installations to continue? Clearly, there is an abundance of taxicabs presently available that lack the enhancements--over 11,000. To the extent that there are in fact drivers that truly consider having a taxi vehicle with the enhancements to be an infringement on their constitutional rights or an invasion of their rights of privacy, those drivers can request one of the 11,000+ vehicles lacking the enhancements, until such time as the court renders its decision, which we understand will be prior to October 1, 2007.

13. This is a very small imposition to make upon those drivers who have waited years to advance their claim and now seek in the most calculating way to destroy all the vendors who were attracted to the Program and deprive the riding public of this much needed technology.

14. Plaintiffs had years to consider raising the legal challenge and chose for whatever reasons to defer all action until the most inopportune time. Plaintiffs should not be rewarded for this strategy. Instead, the Program, properly vetted by the City in all appropriate public forums should continue, uninterrupted until such time as the court has rendered its final decision after full consideration of the issues at hand.

**WHEREFORE**, it is respectfully requested that this Court deny the request for a Preliminary Injunction.

_____
JESSE DAVIS

Sworn to before me this
____ day of September, 2007

_____
NOTARY PUBLIC
JOHN K. BOATENG
Notary Public, State of New York
No. 01BO6036649
Qualified in Bronx County
Commission Expires Feb. 7, 2010

2957482.1

7