```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------x
LOUBERT ALEXANDRE, YVON AUGUSTIN,
MAX CHARTELAIN, WILFRED GERMAIN, CLAUDE
LESSAGE, and JEAN PIERRE, INDIVIDUALLY AS
OWNERS OF YELLOW CAB MEDALLIONS IN THE
CITY OF NEW YORK AND ON BEHALF OF A CLASS
OF ALL OWNERS SIMILARLY SITUATED, AS WELL AS         Civil Action No.
INDIVIDUALLY, TOGETHER WITH MAMNUNUL HAQ
and ASIM AKHTAR, AS HOLDERS OF HACK
LICENSES IN THE CITY OF NEW YORK AND AS
REPRESENTATIVES ON BEHALF OF A CLASS OF
ALL HOLDERS OF HACK LICENSES IN THE CITY OF
NEW YORK, and the NEW YORK TAXI WORKERS
ALLIANCE,                                            AFFIDAVIT OF
                                                     LOUBERT
                  Plaintiffs,                        ALEXANDRE

        - against -

THE NEW YORK CITY TAXI AND LIMOUSINE COM-
MISSION, MATTHEW DAUS, AS COMMISSIONER
/CHAIR OF THE NEW YORK CITY TAXI AND LIMO-
USINE COMMISSION, AND THE CITY OF NEW YORK,

                  Defendants.
------------------------------------------------------------------x

STATE OF NEW YORK    )
                     ) SS.:
COUNTY OF NEW YORK   )
```

LOUBERT ALEXANDRE, being duly sworn, deposes and says:

1. I am the plaintiff in this proceeding and make this affidavit in support of the instant motion for a temporary restraining order and preliminary injunction.

2. I reside in the county of Queens, New York. I am a small business owner who owns both a yellow cab medallion and a yellow cab vehicle. My medallion number is 1T58. My hack license number is 485550. I have had my hack license since approximately 1990, for

seventeen years.

3. I bought my medallion in year 2004 for the price of TWO HUNDRED NINETY SIX THOUSAND NINE HUNDRED DOLLARS ("$296,900.00").

4. I bought my yellow cab vehicle, which is a Toyota Sienna, in 2004 for approximately TWENTY SEVEN THOUSAND DOLLARS ("$27,000.00").

5. My sole means of livelihood for the last four and half years has been to operate my medallion and yellow taxi vehicle. I currently drive my yellow taxi vehicle approximately six days a week to earn my living.

6. My monthly operating costs of my medallion and yellow taxi cab are approximately FOUR THOUSAND DOLLARS ("$4,000.00"), itemized roughly as follows:

| | | |
|---|---|---|
| A) | Medallion Loan Payment: | $2,400.00 per month |
| B) | Yellow Cab Vehicle Insurance Payment: | $337.00 per month |
| C) | Gas: | $1,080.00 per month |
| D) | Oil Change: | $46.00 per month |
| E) | Rate Card: | $1410 every two years |
| F) | Tax Stamp: | $1,000 per year |
| G) | License Renewal Fee: | $120 every two years |
| H) | Annual Drug Test Fee: | $25 per year |
| I) | Wear and Tear/Maintenance: | $3,000-$5,000 per year |

7. In reference to #6 (I) above, by way of example, approximately four months ago, I had to purchase a new transmission for my yellow taxi vehicle for the amount of THREE THOUSAND DOLLARS ("$3,000.00").

8.   Defendant TLC has declared mandatory that before August 1, 2007 I sign a contract for the installation of the of the Taxi Technology System ("TTS") with one of their chosen vendors. The pieces of equipment necessary to operate are: 1) a text message box; 2) a credit card machine; and 3) a Passenger Information Monitor and 4) software to create an electronic trip sheet, which includes GPS technology. All of these items must be physically installed inside of my taxi no later than October 10, 2007, which is my first inspection date after October 1, 2007.

9.   For installation of the TTS technology, TLC is forcing me to bear an upfront installation cost, which I understand from the TLC website, the TLC has estimated to be between "$10 and $4,115."

10.   From the TLC's website, I have learned that the TTS technology also requires me to pay to the vendor a monthly service fee which I understand the TLC has estimated to cost me "between $43 and $200."

11.   I also understand from the TLC website that the TLC cites the maximum costs of the technology over the term of a contract as being "between $2,900 and $7,200 based upon the contract between the vendors and the TLC, advertising fees may offset costs."

12.   TLC's new TTS rules, which are posted on the website, also mandate that if the technology malfunctions, I am required to report it within two hours and it must be repaired within forty eight hours from the particular vendors' service center.

13.   Each time the technology malfunctions, I will have to take my medallion and vehicle off the road and will lose my livelihood while I take the taxi to the repair shop and for the time period my taxi is kept off the road while the malfunction is being fixed, without any compensation by the TLC.

14. The TLC's new rules also say that I must bear the cost of the transaction fee for each credit and debit card transaction which they have estimated will be no less than 2.5% and may be as high as five percent (5%) of each fare. I believe that such transaction fees will result in a huge loss of revenue for me.

15. I do not believe I can afford the burden of the extra imposed costs of TTS no matter which vendor I choose to sign with.

16. The TLC is forcing me to take on these costs when I am already burdened with the present operating costs of my medallion and yellow taxi cab vehicle.

17. I have not signed a contract with any of the vendors to date.

18. The TLC's website says that if I do not sign a contract with a vendor by August 1, 2007, I could face fines and the suspension of my medallion.

19. On August 24, 2007, I received Summons # PIM0020 from the TLC requiring my appearance for a <u>hearing scheduled at 10:20 A.M. on September 5, 2007</u> charging me with a violation of TLC Owner Rules Sec.1-11(g) for failure to sign a contract with a TLC authorized vendor to "buy, lease, rent or use a Taxicab Technology Enhancements System and Service for [my] medallion". Violation of Rule 1-11(g) carries a penalty of "$250 and <u>suspension until compliance</u>". See Copy of Summons #PIM0020 as Exhibit A attached hereto. See copy of Rule 1-11(g) in TLC's TTS Regulations attached as Exhibit A to Complaint

20. The TLC's website has also said that if I don't install the technology into my yellow taxi cab by no later than October 10, 2007, I could face fines and the suspension of my medallion.

21. If the TLC suspends my medallion because I have not signed the contract or if I do not install the technology, I will face the irreparable harm of not being able to earn my livelihood, while continuing to bear the fixed costs for my medallion and vehicle payments, as well as the costs of supporting my family. I have four children, ages 25, 21, 18, and 17.

22. On the other hand, if I do sign a contract with a vendor, I will be forced to install the TTS and I will be driven out of my job because I cannot afford the extra costs associated with the TLC technology mandate.

23. I also feel that the GPS component of the TLC mandated technology is an invasion of my privacy because it will track me every single minute of the day, seven days a week and twenty four hours each day, even when I am off-duty and using my yellow taxi vehicle for my own personal use.

24. While I always comply with TLC's rule prohibiting me from refusing a fare, as part of my occupation each day I make a personal choice of where to start my shift, when to take my bathroom and food breaks, and many other factors based on what I believe to be most profitable and suitable on a given day. I deem this information and even more significantly, information such as the choices of routes that I make to transport my passengers from Point A to Point B as my proprietary information. GPS will capture and record information. As a small businessman, I feel my right to keep such information private is as valuable to me as Coke's recipe of secret ingredients is to Coke.

25. The medallion, the yellow taxi cab vehicle, and the hack licence are my properties. I do not think its fair that the government should force me to rip up my taxi cab and put in all this new technology into my property when I never asked for it, I have no desire for

it, and it is too expensive for me to afford. When I purchased my medallion, taxicab and obtained my hack license, I did not know that one day the government would be allowed to reach its hands into my property to install four pieces of physical gadgetry and make me bear the exorbitant cost of operating such a technology. My investment in the medallion and yellow taxi cab vehicle should be looked at no differently than that of any other small business owner.

26. If the court does not intervene, **I face suspension of my medallion on September 5th, 2007** for failure to sign a contract with a vendor. I do not want to install TTS into my property and the TLC is forcing me to do so or else face the irreparable harm of both losing my livelihood and suffering a permanent physical change to the inside of my property without my consent.

_____<br>LOUBERT ALEXANDRE

Sworn to before me this
29th day of August, 2007

_____
NOTARY PUBLIC

MARIANNE P. STOLA
Notary Public, State of New York
No. 24-4899736
Qualified in New York County
Commission Expires July 27, 2009

# EXHIBIT A



**NEW YORK CITY TAXI & LIMOUSINE COMMISSION**

Uniformed Services Bureau
24-55 Brooklyn Queens Expressway West
Woodside, NY 11377

Matthew W. Daus, Commissioner/Chair

*Naureen Rashid*

Today's Date: 8/22/2007

ALEXANDRE,LOUBERT
241-30 145 AVENUE
ROSEDALE, NY 11422

Your Medallion #: 1T58

## THIS IS SUMMONS #  PIM0020

You are hereby charged with a violation of the N.Y.C. Taxi and Limousine Commission's (TLC) Owners Rules, Sec. 1-11(g), in that as of August 1, 2007, you failed to sign a contract with an authorized taxicab technology service provider to buy, lease, rent or use a Taxicab Technology Enhancements System and Service for each medallion you own.

You are hereby summoned to appear for a hearing at the TLC's Adjudications Division, located at 32-02 Queens Boulevard, Long Island City, New York 11101 at **10:20:00 AM** on **9/5/2007**

---

WHEN APPEARING AT YOUR HEARING YOU HAVE THE FOLLOWING RIGHTS /OBLIGATIONS:

YOU MUST APPEAR IN PERSON TO ANSWER THIS SUMMONS. THE PENALTY FOR VIOLATION OF SECTION 1-11(g) OF THE TLC'S MEDALLION OWNER'S RULES IS $250 AND SUSPENSION UNTIL COMPLIANCE. YOUR FAILURE TO APPEAR WILL BE CONSIDERED A DEFAULT.

IF YOU HAVE A CONTRACT OR CONTRACTS WITH AN AUTHORIZED TAXICAB TECHNOLOGY SERVICE PROVIDER, YOU MUST BRING AN ORIGINAL OR ORIGINALS OF THE CONTRACT TO THE HEARING.

---

1. You must bring with you an original dated contract for the Taxicab Technology Enhancements System and Service for each medallion you own, signed by an authorized contractor and you or your taxicab agent. If your taxicab agent signed on your behalf, you must also bring your original taxicab agent contract.

2. You may be accompanied by an attorney or a non-attorney representative duly authorized by the Commission. If you are a corporation, it may be represented by an officer, director, or employee of the corporation designated as an agent for the corporation. If you are a partnership, it may be represented by any partner. You may also bring a witness(es) and any evidence that supports your case.

3. If you are found in violation of Section 1-11(g), your license will be suspended until compliance and all fines must be paid in cash or by certified check, money order or credit card on the date that the fine is imposed. Failure to pay any fine imposed will result in further grounds to suspend your license(s) and may result in other actions to collect such fine.

4. Failure to appear for your scheduled hearing without having been granted an adjournment or withdrawal of the complaint by the TLC will result in a hearing being held and a decision rendered in your absence, which may result in a fine and/or suspension of your license(s).

5. Any request for an adjournment must be made in person at the TLC's Adjudications Division at least five (5) business days prior to and excluding the hearing date.

COMPLAINANT: Michael Friscia

"I certify that this is a true copy of a summons inserted by me in an envelope addressed to the named respondent at the address set forth thereon and deposited in the normal course of business with the TLC mail service."

TLC Employee Signature: _____   Date: 8/23/07

Government Services & Information for NYC
www.nyc.gov/taxi

*Nauveen KASHID*

I, Lev Nathaniel Kropsky, Special Assistant to the Chief of Staff of the Taxi and Limousine Commission, certify that among my primary duties and responsibilities are those pertaining to the Outreach of the Technology Enhancement Project to the taxicab industry.

The purpose of the Outreach is to publicize the compliance deadlines of medallion owners to sign contracts to buy, lease, rent or use the Taxicab Technology Enhancement System and Service.

Outreach has included multiple mailings which were sent to all medallion owners at the addresses listed in TAMIS, a TLC data base.

The mailings included both mass marketing mailings from each of the four Enhancement Vendors to all medallion owners in May of 2007, which included Industry Notices for the approved providers of the technology systems and services and informing of the August 1, 2007 deadline to contract, and a Final Notice of the August 1, 2007 Sign-Up Deadline which was sent on July 30, 2007, to all medallion owners who had not yet signed a contract with a vendor. The Final Notice informed the medallion owners that Summonses would be issued to those who were not in compliance.

Additionally TLC held various Outreach events at its Woodside facility. These included a Tech Enhancement Seminar on September 30, 2006 as well as Tech Vendor Expos on June 25, 2007 and July 10, 2007. Each of these seminars was publicized on the TLC website. The notice of the third seminar contained a reminder of the August 1, 2007 Sign-Up Deadline.

Further Woodside Outreach included a feedback session with drivers of the 200 beta test cars on May 7, 2007, and vendor marketing and showcasing of test vehicles on multiple dates at the Woodside inspection lanes beginning on May 7, 2007.

Furthermore, Outreach at JFK was held April, May, June, and July, 2007.

Outreach was held at LGA in April and May 2007.

Outreach was held at Fleets on various days in April and May, 2007.

Finally, the TLC posted an Industry Notice dated June 7, 2007 on the TLC website advising of the August 1, 2007 deadline for medallion owners to contract and explaining to medallion owners the technology program and their responsibilities. This June 7, 2007 Industry Notice was preceded by three notices dated May 25, 2007, June 1, 2007, and June 6, 2007 advising of authorized providers of the technology systems services and the August 1, 2007 deadline to contract. A June 26, 2007 Industry Notice posted on the TLC website again provided the August 1, 2007 deadline.

The four authorized vendors have submitted copies of signed contracts and lists of medallions that have signed up for the Taxicab Technology System and Service. Approximately 12,850 medallion owners signed contracts.

On August 22, 2007, in the ordinary course of business, TLC staff for the Taxicab Technology Enhancement System reviewed those listings and the list of medallions that are in storage. TLC staff compared the authorized vendors' lists with the TLC database and extracted medallion numbers of owners who have not contracted for the system and services. The Respondent is not on the vendors' lists, the medallion is not in storage and the TLC has been provided with no record that the medallion owner has signed a contract for a system and services.

A list of these medallions owners was sent to the Uniform Service Bureau of TLC on August 22, 2007 to issue summonses for failure to comply with Rule 1-11(g).

Lev Nathaniel Kropsky _Lev Nathaniel Kropsky_

Date Signed _August 22, 2007_